STATE OF NEBRASKA, APPELLEE, V.
MARK ALLEN LINGLE, APPELLANT.

308 N.W.2d 531

Filed July 17, 1981. No. 43940.

H. E. Hurt, Jr., James A. Gallant, and Jeffrey S.

Flores for appellant.

Paul L. Douglas, Attorney General, and Shanler D. Cronk for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, BRODKEY, WHITE, and HASTINGS, JJ., and COLWELL, Retired District Judge.

WHITE, J.

Appellant, Mark A. Lingle, appeals from an order of the District Court for Dodge County, Nebraska, affirming the judgment of conviction entered on the jury verdict in the county court of Dodge County, Nebraska. The jury found the appellant guilty of resisting arrest, disturbing the peace, and obstructing a police officer. The court sentenced defendant to 1 year's probation subject to numerous conditions, including one that he serve 6 months in the Dodge County jail. Appellant appealed to the District Court for Dodge County, which, on November 18, 1980, affirmed the judgment and conviction but remanded the case to the county court for resentencing after finding that the sentence of probation by the county court was not imposed in conformity with the provisions of Neb. Rev. Stat. § 29-2262 (Reissue 1979). On remand, the county court again sentenced defendant to 1 year's probation but reduced the time to be served in the Dodge County jail to 90 days; the rest of the original conditions of probation remain the same after sentencing on remand. Appellant has appealed to this court, assigning numerous errors.

Although the testimony in the record is conflicting, it appears that the facts of this case are as follows. On March 7, 1980, appellant, then age 19, and another man, Brad H. Charter, were tenants in one side of a duplex at 204 So. Clarmar Street, Fremont, Nebraska. Through the course of the evening of March 7, 1980, friends of appellant and his roommate began to gather at this duplex, and by late in the evening

there were, according to the testimony, somewhere between 10 and 30 people at the duplex drinking beer, engaging in conversation, and playing either a stereo or a radio. Police officers testified that they observed some of the guests at the duplex smoking marijuana; however, no arrests for possession of marijuana were made. During the course of this evening, appellant and some friends left the duplex and went to a local lounge where they remained until sometime between 11 p.m. and 1 or 1:30 a.m. While appellant and his friends were at the lounge, the "party" continued at the duplex. Sometime after 10 p.m., a neighbor, one Russell Benjamin, who lived in the other half of the duplex, entered appellant's side of the duplex in an apparent effort to register a complaint as to the noise level in appellant's side of the duplex. Fisticuffs between Benjamin and various guests ensued, and Benjamin left. Shortly thereafter, Benjamin returned with the landlord, Gary Pebley. More fisticuffs ensued between the guests, Benjamin, and the landlord, and police were summoned. Before the police arrived, appellant and his friends arrived at the duplex from the lounge.

It is appellant's testimony, and the testimony of some defense witnesses, that when he returned, he made his way to the basement of the duplex with several other people. At the time appellant returned from the lounge, neither the police nor the landlord had yet arrived. While appellant was still in the basement, Benjamin and the landlord returned and the second incident of fisticuffs ensued. Shortly thereafter, the police arrived. Police Officer Fish testified that after breaking up two fights he went into the kitchen area of the duplex. He was followed, according to his testimony, by a large and rather noisy group of people. He "announced in a large voice that the party was over, that it was creating a disturbance." At this time, the officer testified, Mark Lingle "apparently came through a doorway, yelling and screaming and

waving his hands and comes directly at me, takes both hands and pushes me back against several other parties." There is a great deal of conflict in the testimony of the witnesses as to how the initial contact between the appellant and Officer Fish came about. At any rate, after the initial contact, the officer testified that he believed the appellant was about to hit him, and, as a result, the officer jabbed the appellant in the stomach with his flashlight. As he was bringing the flashlight up to strike the appellant on the chin, the appellant doubled over and the flashlight instead struck the appellant in the forehead, causing a gash which required several stitches to close.

Officer Fish and another Fremont police officer, Reserve Officer Ellis, then placed handcuffs on the appellant, advising him that he was under arrest. There is testimony in the record, although it is contradicted by some defense witnesses, that appellant resisted the officers' attempt to handcuff him. After appellant was handcuffed, he was taken out to the police car and transported to Dodge County Hospital where the wound in his head was stitched. During the time that he was being taken to the police car and to the hospital, the officers testified that he was verbally abusive toward them. After appellant's head wound received medical attention at the Dodge County Hospital, he was taken to the Dodge County jail where he spent several hours in the sobriety cell. When he was released from the sobriety cell, Officer Fish testified that he explained to appellant the charges that had been filed against him and then returned appellant to his home. Appellant was originally charged with third degree assault, resisting arrest, disturbing the peace, and obstructing a peace officer. However, at the end of the State's case during trial, appellant's attorney moved that the assault charge be dismissed since the State had failed to prove that appellant caused bodily injury to Officer Fish. The motion was granted. Following the trial, the jury

found the appellant guilty on the remaining three counts of the complaint. He was sentenced as set out above and has perfected this appeal.

Appellant's first assignment of error is that the trial court erred in failing to dismiss count III of the complaint, disturbing the peace, since it does not allege specifically what defendant did that willfully disturbed the peace. However, defendant concedes that he did not file a demurrer to the pleadings. This court stated in *State v. Haile*, 185 Neb. 421, 423, 176 N.W.2d 232, 234 (1970), that "an information first questioned on appeal must be held sufficient unless it is so defective that by no construction can it be said to charge the offense for which the accused was convicted." The complaint in this case charged that Mark Lingle, on or about the 8th of March 1980, in Dodge County, "did then and there intentionally disturb the peace and quiet of a person, family or neighborhood, to-wit: by shouting at police, and starting to pick a fight with police, after they had ordered all persons to leave a noisy party that Mark Lingle was at . . . ." The statute, Neb. Rev. Stat. § 28-1322 (Reissue 1979), simply states that "[a]ny person who shall intentionally disturb the peace and quiet of any person, family, or neighborhood commits the offense of disturbing the peace." In *State v. Haile*, *supra* at 424, 176 N.W.2d at 234, we also stated: "A complaint charging a statutory misdemeanor substantially in the language of the statute, will be liberally rather than technically construed, and if a defect is amendable, it will be held sufficient on appeal in the absence of objection in the trial court."

*State v. Dreifurst*, 204 Neb. 378, 381, 282 N.W.2d 51, 53 (1979), stated: "[A]n information or complaint must inform the accused, with reasonable certainty, of the charge being made against him in order that he may prepare his defense thereto and also be able to plead the judgment rendered thereon as a bar to a later prosecution for the same offense." We believe that

the information charging the appellant with disturbing the peace was sufficient under the standards set out in *State v. Haile, supra,* since we cannot say that it is so defective that by no construction can it be said to charge the offense of disturbing the peace. Furthermore, it is plain from the record that the defendant was able to prepare his defense to the charge of disturbing the peace, and we think it is clear that he would be able to plead the judgment rendered on that charge as a bar to later prosecution for the same offense. The assignment of error is without merit.

Appellant next assigns as error the court's failure to dismiss the counts of resisting arrest and obstructing a police officer on the grounds that there was no evidence of intent to commit either of these offenses. There is sufficient evidence in the record on the question of intent that the trial court's action in sending the issue to the jury was correct. Officers Fish, Ellis, and Seyboth all testified as to the manner in which appellant resisted the arrest, both physically and with verbal abuse directed toward the officers. Although their testimony was contradicted in some respects by testimony of defense witnesses, the resolution of the conflicting evidence was for the jury. Therefore, these assignments of error are likewise without merit.

Appellant next argues that it was error for the trial court to allow the State's attorney to introduce into evidence probation orders for two defense witnesses who, in their testimony, admitted that they had previously been convicted of a felony. Initially, we note that appellant's attorney made no objection when the order of probation of one Rick Goebel was introduced at trial and, thus, has waived that issue on appeal. *State v. Hogan,* 194 Neb. 207, 231 N.W.2d 135 (1975). Thus, the only issue in this assignment of error which we may properly review is whether or not the order of probation of the witness Brad Charter was properly introduced.

Neb. Rev. Stat. § 27-609(1) (Reissue 1979) states: "For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination, but only if the crime (a) was punishable by death or imprisonment in excess of one year under the law under which he was convicted or (b) involved dishonesty or false statement regardless of the punishment." This statute, passed in 1975, repealed the former statute on this point which was found at Neb. Rev. Stat. § 25-1214 (Reissue 1964): "A witness may be interrogated as to his previous conviction for a felony, but no other proof of such conviction is competent except the record thereof." Under the former statute, we stated in the case of *State v. Kallos*, 193 Neb. 113, 121, 225 N.W.2d 553, 557-58 (1975), that "where a witness on cross-examination admits previous conviction of a felony, it is error to allow further inquiry on the subject or permit the record of the conviction to be introduced." The wording of the new statute states only that evidence of a prior conviction may be admitted if elicited from the witness or established by public record, but it neither directly adopts nor rejects the holding of *State v. Kallos, supra.*

In the case of *State v. Reinert*, 197 Neb. 379, 248 N.W.2d 782 (1977), the prosecuting attorney, after eliciting from the witness an admission that he had been previously convicted of a felony, then questioned the witness about his present incarceration. Objection to the question was sustained. On appeal we said: "The question regarding his present incarceration for the admitted felony, although improper, was not prejudicial as it added no additional detrimental information." *Id.* at 380, 248 N.W.2d at 784. The same principle holds true in this case. If it was error for the trial court to admit the order of probation after the witness Charter's admission that he had been convicted of a felony, the order of probation itself did not add

any detrimental information bearing on the credibility of the witness that was not already present by his answer on cross-examination. Thus, we find that the admission of the order of probation, if error it was, constituted no more than harmless error and is not grounds for reversal. A number of other witnesses testified to the same or a similar version of the events as the witness Charter, and thus, any damage to Charter's credibility resulting from the admission of the probation order was not prejudicial to a substantial right of the appellant. The assignment of error is without merit.

Appellant next argues that it was error for the trial court to refuse to give the following instruction: "The use of force by an officer in making an arrest is not justifiable unless such officer makes known to the person to be arrested the purpose of the arrest. The use of deadly force by an officer in making an arrest is not justifiable unless the arrest is for a felony." We note first that appellant is under a threefold burden in making this complaint. As was said in *Phillips v. State*, 154 Neb. 790, 800, 49 N.W.2d 698, 705 (1951): "'"When complaint is made of the refusal of the district court to give an instruction asked, the burden is upon the party complaining to show, not only that he was probably prejudiced by the refusal of the court to give the instruction, but he must also show that the entire instruction was correct as a proposition of law and applicable to the facts in evidence in the case."'" Appellant fails in meeting this burden with regard to the requested instruction because the instruction is not correct as a proposition of law.

According to *Breese v. Newman*, 179 Neb. 878, 880-81, 140 N.W.2d 805, 808 (1966), "[i]n making an arrest, an officer may use whatever force is reasonably necessary. Reasonable force is generally considered to be that which an ordinarily prudent and intelligent person, with the knowledge and in the situation

of the arresting officer, would have deemed necessary under the circumstances." Further, "[t]he officer is not required to determine at his peril the precise amount of force necessary in each instance and to use that much and no more, and he may be guided by the reasonable appearances and the nature of the case in determining the amount of force to be used." 6A C.J.S. *Arrest* § 49 at 114 (1975). The reasonableness of the force used in effecting an arrest is a question for the jury. *Breese v. Newman, supra.* The trial court's refusal to give the instruction requested by appellant was correct and this assignment is without merit.

Appellant also argues that it was error for the court to include, as a condition of his probation, paragraph 15 of the order of probation which states: "That he shall be subject to the search of his personal and real property at any time, day or night, by any law enforcement or probation officer without the issuance of a search warrant." The statute under which the trial court was authorized to place the defendant on probation, Neb. Rev. Stat. § 29-2262 (Reissue 1979), states: "(1) When a court sentences an offender to probation, it shall attach such reasonable conditions as it deems necessary or likely to insure that the offender will lead a law-abiding life." This statute also states: "(2) The court, as a condition of its sentence, may require the offender: . . . (p) To satisfy any other conditions reasonably related to the rehabilitation of the offender."

This court recently, in the case of *State v. Morgan*, 206 Neb. 818, 295 N.W.2d 285 (1980), considered a condition in the appellant's probation which required him to submit to a search of his person or property at any time, by any law enforcement officer, with or without probable cause, for controlled substances. The appellant in *Morgan* had been convicted of possession of controlled substances. In *Morgan* at 826-27, 295 N.W.2d at 289, this court stated that

"conditions in probation orders requiring the probationer to submit to warrantless searches, to the extent that they contribute to the rehabilitation process and are done in a reasonable manner, are valid and constitutional." This court in the *Morgan* case relied to some extent on the case of *State v. Montgomery*, 115 Ariz. 583, 566 P.2d 1329 (1977), which stated that a condition similar to the one at issue here "is a restriction upon the defendant's privacy, but this does not make the condition unconstitutional. While defendant is on probation his expectations of privacy are less than those of other citizens not so categorized. It is not an unreasonable or an unconstitutional limitation upon his right to be free from unreasonable searches and seizures." *Montgomery* at 584, 566 P.2d at 1330.

The Dodge County Court, in ordering probation for the appellant, added certain other conditions, including ones that he refrain from the use of alcoholic beverages and that he refrain from the use or possession of narcotics. The warrantless search condition is reasonably related to enforcement of the other conditions of appellant's probation, and we feel that all these conditions are reasonably related to the rehabilitation of appellant. It is apparent from the record that the use of alcoholic beverages contributed to a large extent to the disturbance which led to appellant's arrest, and the presentence investigation conducted into appellant's background disclosed that he used alcohol and controlled substances on a rather regular basis. It was well within the trial court's discretion to consider the information in the presentence investigation when sentencing the appellant. *State v. Kramer*, 203 Neb. 658, 279 N.W.2d 634 (1979). This assignment of error is without merit.

Appellant next argues that the trial court erred in requiring defendant, as a condition of probation, to sign a waiver of extradition in the event he is charged with violation of probation. We note first

that it does not appear that the waiver of extradition is, in fact, a condition of probation. However, were we to consider it as such, the weight of authority holds that such waivers are valid. In *Pierson v. Grant*, 527 F.2d 161 (8th Cir. 1975), where the appellant signed a waiver of extradition as a condition precedent to parole, the court stated at 164: "Requiring the execution of a waiver of extradition as a condition precedent to parole does not render the waiver involuntary without a specific showing of how such a condition was coercive as applied in the particular case." In 35 C.J.S. *Extradition* § 2 at 382 (1960), it is stated: "Since the purpose of extradition is the return of a fugitive, none of his constitutional rights, other than his right to personal liberty, are involved." In *Forester v. California Adult Authority*, 510 F.2d 58, 61 (8th Cir. 1975), the court stated that "Forester claims that conditioning his parole upon the execution of an extradition waiver was per se coercion. This is not the law. Parole is an act of grace and reasonable conditions may be imposed in connection therewith. . . . Nor has Forester demonstrated how such a condition was coercive as applied to him." Appellant has made no showing that the waiver of extradition which he signed was involuntary or coercive as applied to him. Therefore, this assignment of error is likewise without merit.

The final assignment of error by appellant which we will consider here assigns as error numerous evidentiary rulings of the trial court whereby objections of appellant's attorney to questions by the State's attorney were overruled. In his brief to this court, appellant's attorney concedes "that no one [of these rulings] would be enough to unduly prejudice the rights of the defendant. It doesn't take but a few, however, to give the impression to the jury that the court has formed an opinion favorable to the State's case." We have reviewed these rulings and find that the facts which the challenged testimony was intended

to elicit were amply established by other testimony to which there was no objection. Additionally, in its instructions to the jury, the trial court included the standard cautionary instruction that the jury "must not construe any statements, actions, or rulings of the court in the trial of this case . . . as reflecting an opinion of the court as to how this case should be decided." This cautionary instruction has long been held sufficient under our adversary system of justice to cure the problem which appellant raises. This assignment of error, like the others, is without merit.

We have reviewed appellant's remaining assignments of error referring to improper charging of the defendant, selective law enforcement, etc. We find that these assignments of error are nonmeritorious, to the point of being frivolous. The verdict of the jury and the judgment and sentence of the trial court were correct in all respects and are affirmed.

AFFIRMED.

KRIVOSHA, C.J., concurring in part, and in part dissenting.

I generally concur in the majority opinion in this case. I must, however, dissent from that portion of the majority opinion which holds that conditions in a probation order requiring the probationer to submit to warrantless searches and requiring the execution of a waiver of extradition as a condition precedent to probation do not deny to the probationer those constitutional rights which he retains notwithstanding his conviction of a crime.

I have already set out my reasons for so holding in my dissent in *State v. Morgan*, 206 Neb. 818, 295 N.W.2d 285 (1980), and will not repeat them here.

Carrying the arguments of both *State v. Morgan* and the instant case to a possible conclusion, one could argue that an individual placed on probation could be required as a condition of probation to give up all of one's constitutional rights. I do not believe

that such a requirement is lawful. I would hold that such requirements as those contained in the instant order of probation were invalid and should not be enforceable under the conditions presented in the instant case.