736 P.2d 1295

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Timothy GAWRON,
Defendant-Appellant.**

No. 16235.

Supreme Court of Idaho.

March 31, 1987.

Rehearing Denied May 28, 1987.

Alan E. Trimming and George M. Parham (argued), Boise, for appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., and David R. Minert, Deputy Atty. Gen. (argued), Boise, for respondent.

SHEPARD, Chief Justice.

This is an appeal by defendant-appellant Gawron, from a conviction of grand theft by possession of stolen property. I.C. §§ 18–2403(4) and 18–2407. The sole question presented is the legality of a warrantless search pursuant to the terms of Gawron's probation. We uphold the legality of the search and affirm the conviction.

In April 1984, Hartgrove, a detective in the Boise Police Department, was investigating recent burglaries in the Boise area in which silver, gold coins and jewelry had been stolen. A routine check of pawn tickets indicated that Gawron's name appeared

on several tickets related to pawning of jewelry, coins and melted-down gold bars. These items matched those taken in the burglaries. Further investigation of Gawron revealed that he was on probation and unemployed.

Thereafter, Hartgrove called the Office of Probation and Parole, and since Gawron's probation officer was not working that day, spoke to Senior Probation and Parole Officer Housley, informing him of the investigation of the pawn tickets. Housley confirmed that Gawron was then on probation and had been convicted of receiving and disposing of stolen property, from which conviction he had been placed on probation in October 1981. One of the terms of probation imposed on Gawron stated:

> That probationer does hereby agree and consent to the search of his person, automobile, real property, and any other property at any time and at any place by any law enforcement officer, peace officer, or probation officer, and does waive his constitutional right to be free from such searches.

That order indicated that Gawron had certified to a reading and understanding of the terms of the order, and that he accepted those terms and signed the order.

Thereafter, Housley decided that under the circumstances a search of Gawron's residence was warranted, and Housley, accompanied by Hartgrove and two other officers, went to Gawron's residence. Gawron was not home at the time, but Housley conducted a search and found a marijuana bong in the bathroom of the main floor, and thereafter proceeded to search the garage. Housley broke the lock on the garage to enter, and therein found a locked tool box, the lock to which was also broken by Housley. Inside the box were found numerous coins, coin books, stamps, stamp collection books, and jewelry, which were determined to be proceeds of the burglaries that Hartgrove was investigating. Thereafter, a search warrant was obtained and another search was conducted pursuant to the warrant, with additional evidence being seized.

Following a trial to a jury, Gawron was found guilty of grand theft by possession of stolen property, a judgment of conviction was entered, and a sentence imposed of an indeterminate term of seven years.

As heretofore stated, the sole question presented is the validity of the warrantless search, and the admission into evidence of the items seized during those searches.

The order of October 1981, suspending Gawron's then sentence for receiving and disposing of stolen property, unequivocally states and agrees that Gawron waives any constitutional right to be free from such a warrantless search. I.C. § 19–2601(4) provides that conditions may be placed upon a defendant's probation:

> (4) Suspend the execution of the judgment at any time during the first 120 days of a sentence to the custody of the state board of correction, during which time the court shall retain jurisdiction over the defendant which jurisdiction shall be entered on the order of the commitment, and place the defendant on probation under such terms and conditions as it deems necessary and expedient, notwithstanding that the term of the court during which such defendant was convicted or sentenced may have expired; upon application of the state board of correction and for good cause shown, the court may extend the period under which it retains jurisdiction of the defendant an additional sixty days.

As stated in *People v. Kerns*, 71 Cal. Rptr. 105, 264 Cal.App.2d 962 (1968):

> The condition of probation that defendant consent to a search of his person by a law enforcement officer without a search warrant, is a supervisorial procedure related to his reformation and rehabilitation in light of the offense of which he was convicted. ... The purpose of an unexpected, unprovoked search of defendant is to ascertain whether he is complying with his terms of probation; to determine not only whether he disobeys a law, but also whether he obeys the law. Information obtained under

such circumstances would afford a valuable measure of the effectiveness of the supervision given the defendant and his amenability to rehabilitation.

*See also In re Bushman,* 1 Cal.3d 767, 83 Cal.Rptr. 375, 463 P.2d 727 (1970) and *Pierson v. Grant,* 527 F.2d 161 (8th Cir.1975), where it is held that courts have broad discretion when granting probation in the imposition of restrictive conditions to foster rehabilitation and protect public safety. It is also noted that if a defendant considers the conditions of probation too harsh, he has the right to refuse probation and undergo the sentence. If such a defendant desires to challenge the legality of any proposed conditions of probation, he may do so on appeal from the judgment, or on habeas corpus. *See In re Allen,* 71 Cal.2d 388, 78 Cal.Rptr. 207, 455 P.2d 143 (1969); *In re Osslo,* 51 Cal.2d 371, 334 P.2d 1 (1958).

■ Gawron contends that the probation condition which requires submission to warrantless searches constitutes an unreasonable invasion of his fourth amendment rights. However, we hold that such persons conditionally released to societies have a reduced expectation of privacy, thereby rendering intrusions by government authorities "reasonable" which otherwise would be unreasonable or invalid under traditional constitutional concepts. *See State v. Lingle,* 209 Neb. 492, 308 N.W.2d 531 (1981); *State v. Montgomery,* 115 Ariz. 583, 566 P.2d 1329 (1977).

■ The scope of the search in the instant case well may have exceeded the permissible limits announced in *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). However, that decision acknowledged the existence of "well recognized exceptions" to the general rule requiring a warrant in order to conduct a house search. One of those exceptions set forth in *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), is "a search to which an individual consents.... *Zap v. United States,* 328 U.S. 624 [66 S.Ct. 1277, 90 L.Ed. 1477] (1946)."

We hold the decision in *Zap v. United States, supra,* analogous in the case at bar, for it upheld the validity of an advance waiver of fourth amendment rights which are akin to the provisions of the probation agreement in the instant case. In *Zap,* a government contractor agreed to a contract provision allowing agents of the government to review accounts and records of the contractor which the court held that the government agents would otherwise not have had absent the advance waiver. Evidence discovered pursuant to such an audit, in the absence of the contractor, was held to be legally obtained and admissible in the trial leading to his conviction.

In *State v. Blevins,* 108 Idaho 239, 697 P.2d 1253 (Ct.App.1985), it was held that the issue of voluntary knowing and intelligent waivers is essentially a factual issue turning on the accused's state of mind, and lending itself to resolution by the trial court. Here, Gawron has made no allegation that his signature and acceptance of the order and conditions of probation were involuntary or done unintelligently.

Gawron argues that the lower court, and this Court, were required to apply the three-prong test enunciated by the Court of Appeals in *State v. Vega,* 110 Idaho 685, 718 P.2d 598 (Ct.App.1986). The Court of Appeals, in *Vega,* relied upon *State v. Pinson,* 104 Idaho 227, 657 P.2d 1095 (Ct.App. 1983). We note that in neither *Vega* or *Pinson* did the Court of Appeals discuss the validity of a warrantless search when a probationer, as a condition of his probation, had expressly waived his constitutional right to be free from warrantless searches. Since we base our determination in the instant case upon Gawron's consent to warrantless searches, both *Vega* and *Pinson* are inapplicable to the instant case, and we need not discuss the continued validity of the three-prong test enunciated by the Court of Appeals in *Vega.*

The judgment of conviction is affirmed.

DONALDSON, BAKES and HUNTLEY, JJ., concur.

BISTLINE, Justice, dissenting.

The majority would affirm the conviction of Gawron and uphold his probation condition by the expediency of embarking upon a discussion of the validity of his "voluntary and intelligent" waiver. Left with only a cursory discussion is the probation condition itself and the question of its "reasonable" intrusion upon Gawron's Fourth Amendment rights. The provision of probation here at issue goes far beyond being a reasonable intrusion of Gawron's rights.

Strangely, the majority has chosen a path in a direction opposite to the recent well-reasoned opinion of the supreme court of our neighboring state to the east in *State v. Fogarty*, 187 Mont. 393, 610 P.2d 140 (1980), where that court had before it a similar probationer search condition. The court noted that a waiver theory is an improper justification for the probation conditions:

> Regardless of the condition imposed, if that is the sentencing court's decision, the probationer has little or no say in the matter. He can refuse to accept the conditions imposed and go to prison, or he can accept the conditions and remain in society subject to the State's supervision for the probationary period. A waiver theory however, does not comport with the requirements of *Johnson v. Zerbst* (1938), 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, that a waiver is invalid unless it be made knowingly, intelligently, and voluntarily. *A choice cannot be termed voluntary where the alternative is prison and even more restrictions.* *Id.* at 147 (emphasis added).

In a similar fashion Arizona has recognized the probationer's plight in "waiving" his Fourth Amendment rights:

1. The Supreme Court of Arizona later vacated *State v. Page* in *State v. Page,* 115 Ariz. 156, 564 P.2d 379 (1977), on other grounds and left the probationary condition issue to be discussed. In a later case, *State v. Montgomery,* 115 Ariz. 583, 566 P.2d 1329 (1977), it did so, and went on to authorize warrantless searches in limited situations:

> We agree that in a great majority of cases the trial court should not require, as a condi-

The waiver theory, which presumes consent to the terms of probation by the defendant, presents consent in more of a nominal than real sense. The damoclean choice of imprisonment would rarely be chosen over probation, even if the probationer must accept severe inroads on protections afforded by the Bill of Rights. *State v. Page*, [115 Ariz. 131] 564 P.2d 82 (Ariz.Ct.App.1976).[1]

The *Fogarty* court next recognized that in dealing with inviolable constitutional rights, the probation conditions must come under a "special scrutiny." This duty to scrutinize was noted in *United States v. Consuelo-Gonzalez*, 521 F.2d 259 (9th Cir. 1975):

> [I]t must be recognized that probationers, like parolees and prisoners, properly are subject to limitations from which ordinary persons are free, it is also true that these limitations in the aggregate must serve the ends of probation. Conditions that unquestionably restrict otherwise inviolable constitutional rights may properly be subject to special scrutiny to determine whether the limitation does in fact serve the dual objectives of rehabilitation and public safety. 521 F.2d at 265.

The language of Gawron's probation condition is even broader than that found in *Consuelo-Gonzalez* which there was: "submit to search of her person or property at any time when requested by a law-enforcement officer," *id.* at 261 n. 1, and as broad as that of *Fogarty:* "submit to search of his person, premises or vehicles at any time by lawful authorities." 610 P.2d at 144. Both of these courts noted that such unfettered power to search did not serve the ends of probation:

> tion of probation, that the probationer submit to a search and seizure without warrant by any police officer.... If there is a need because of distance or time, the probation officer can always authorize such a warrantless search by the police officer.... Warrantless searches by police officers, however, should be *sparingly* given. *Id.* 566 P.2d at 1331 (emphasis added).

[T]he condition imposed on Consuelo-Gonzalez literally permits searches which could not possibly serve the ends of probation. For example, an intimidating and harassing search to serve law enforcement ends totally unrelated to either her prior conviction or her rehabilitation is authorized by the terms of the condition. *Consuelo-Gonzalez, supra,* 521 F.2d at 265.

The search provision imposed here would permit not just the probation officer but any "lawful authorities" to search the probationer's home, his person, or his vehicle, at any time, and in any place and manner, and for no other reason than the mere whim or caprice of whomever decided to conduct a search. In *Tamez v. State* (Tex.App.1976), 534 S.W.2d 686, the Court struck down a warrantless search provision in all essentials similar to the one under attack in this case. In holding the search provision too broad in scope and thus in violation of the probationer's Fourth Amendment rights (as well as a violation of the Texas Constitution) the court aptly characterized its effect:

"The condition imposed would literally permit searches, without probable cause, or even suspicion, of the probationer's person, vehicle or home at any time, day or night, by any peace officer, which could not possibly serve the ends of probation. For example, an intimidating and harassing search to serve law enforcement ends totally unrelated to either his prior conviction or his rehabilitation is authorized by the probationary condition." 534 S.W.2d at 692.

We can say no less about the effect of the warrantless search provision imposed in this case; it permitted any law enforcement official to search the defendant, his home, or his vehicle, whenever the mood struck. Such a provision is too great an infringement upon the probationer's rights under the federal and state constitutions. *Fogarty, supra,* 610 P.2d at 149.

The provision which the majority upholds creates the same potential for abuse and is the same broad intrusion on Gawron's Fourth Amendment rights. Oregon has reached the same result as *Fogarty* in considering such "search" conditions. *State v. Fisher,* 32 Or.App. 465, 574 P.2d 354 (1978); *State v. Thomas,* 33 Or.App. 69, 575 P.2d 171 (1978); *State v. Holm,* 34 Or.App. 503, 579 P.2d 860 (1978); *State v. Batson,* 35 Or.App. 175, 580 P.2d 1066 (1978).

The "ends of probation" which *Consuelo-Gonzalez* refers to are the ultimate reformation and rehabilitation of the probationer. Any diminution of Fourth Amendment rights is justified only by the legitimate demands of the probation process. These demands include the protection of society but should not involve law enforcement or peace officers *viz a viz* probation officers in the probation process.

[T]he police are not part of the probation process. They have no direct responsibility to supervise probation or to facilitate rehabilitation of the defendant. Their primary responsibility is to ferret out crime and to prosecute the offender. In the give and take of plea negotiations the district attorney does not necessarily have rehabilitation in mind when negotiating the terms of probation. He may simply be attempting to facilitate future investigation of crimes. *State v. Hovater,* 37 Or.App. 557, 588 P.2d 56, 59 (Or. Ct.App.1978).

The majority notes that the probationer has a reduced expectation of privacy, but, as observed by the *Fogarty* court, there is an overriding need to balance the rights of society against the probationer's and third parties' expectation of privacy. The unlimited bounds of Gawron's probation condition could inevitably lead to an invasion of the privacy of third parties associated with Gawron, be they family, relatives, or friends:

We can only assume a "respectable position" if we can give fair consideration to the rights of innocent third parties who may be caught up in the web of

the probationary system or probationary process. These people are not stripped of their right of privacy because they may be living with a probationer or he may be living with them. While a probationer's right of privacy may be justifiably diminished while on probation, the rights of these people are not so diminished. We, as well as the trial courts, would be derelict in our duties if we failed to consider the rights of these innocent others so that they are not swept away by the probationary process. *Fogarty, supra,* 610 P.2d at 151.

The majority's language fails to give even the slightest consideration, nay, even mention of, the effect Gawron's probation conditions may have on innocent third parties.

The acceptable scope for a consent to search condition should be either limited to the probation officer himself or a law enforcement officer at the direction of the probation officer. An example was given in *State v. Page:*

> That the defendant submit to a search of her person or property conducted in a reasonable manner at a reasonable time by a probation officer or peace officer at his direction where the probation officer has reasonable grounds to believe that a violation of probation has occurred or is about to occur. *Page, supra,* 564 P.2d at 85.

Another acceptable form would be the version found in Gawron's signed State of Idaho State Board of Correction Agreement of Probation which provided: "4. Consent to search, seizure and chemical testing at the request of his probation officer for possession or use of controlled substances, possession of contraband or evidence of crime, and possession of a dangerous or deadly weapon." Gawron has by it agreed to consent to a search and, if Gawron refuses to so consent upon the request of his probation officer, then Gawron can expect that the probation officer may re-

port the violation, and the probation will be revoked.[2]

Both of the mentioned forms differ from the one selected by the majority in the majority's establishing any or no limitation on the role of those outside the probation process, namely the police. We all recognize, as did the Court in *Page,* that information leading to the search may originate from the police. If this information points to suspected probation violations, then the probation officer or, if so designated, a law enforcement officer at the probation officer's direction can search the probationer. This has removed the majority's "carte blanche authority" to search the probationer whether related to the probation or not. *See Page, supra,* 564 P.2d at 85. There is not much in the majority opinion to commend it as erudite wisdom which the public should embrace.

An additional concern here is the conflict of the various probation orders and agreements which Gawron was required to sign which included both an "Order Suspending Sentence and Order of Probation" and a "State of Idaho State Board of Correction Agreement of Probation." A disturbing situation exists in the apparent conflict between the two. They both list special conditions for the probationer but only the court order contains the troublesome condition discussed previously. The State of Idaho form has the look of a standardized form but also an add-on section for special conditions, here incorrectly photocopied to be "cial conditions." Clerical errors aside, I perceive a problem of ambiguity. Which of the two controls the conditions of probation? How is the probationer to know, meaning to rise up to the knowledge of a legally trained person, with exactitude the restrictions to which he is subjected? Probation terms that fail to precisely and adequately inform the probationer of his rights and restrictions cannot in good faith be called reasonable, and missing, also, is the requirement of governmental forewarn-

---

**2.** This is substantially less severe and less offensive than having law enforcement officers slap Gawron (and all other Gawrons) over the hood of a car and search at will on the basis of a previous outright consent to be searched at any time and any place.

ing. Noting the ambiguity or vagueness created by the overkill of probation orders and agreements, then that which Shepard, J., wrote a few years ago is pertinent, where he observed from his reading of *United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954), that "this notion of 'fair notice or warning' ... is said to require reasonably clear guidelines to prevent arbitrary and discriminating enforcement...." State v. Lopez, 98 Idaho 581, 586, 570 Pl.2d 259, 264 (1976).

The largest concern with today's majority opinion is its rather autocratic disregard of respectable authority from our neighboring western states and also the Ninth Circuit Court of Appeals[3] which encompasses Idaho and those other states. The majority embarks upon no attempt to refute the reasoning of those courts, nor to point out any features distinguishing the cases before those other courts from the one presented to us.

---

**3.** Of added interest are the number of judges deciding these cases. *Consuelo-Gonzalez* was heard before a panel of thirteen circuit judges: Chambers, Merrill, Koelsch, Browning, Duniway, Ely, Hufstedler, Wright, Trask, Choy, Goodwin, Wallace and Sneed. The Montana case, *Fogarty,* was decided by seven justices. Final score: 16 to 4 in favor of promoting rehabilitation as against decimating its altruistic and admirable objectives. A legitimate concern is why any member of this Court, giving the benefit of prior decision law on the same subject, is so loathe to even concede that there are good legal minds in other jurisdictions, and those legal minds have already shown the route to take and paved it well.