STATE OF NEBRASKA, APPELLANT, V. THOMAS PAWLING, APPELLEE.

621 N.W. 2d 821

Filed December 26, 2000.    No. A-00-942.

James S. Jansen, Douglas County Attorney, and Michael P. Meckna for appellant.

Thomas C. Riley, Douglas County Public Defender, and Scott C. Sladek for appellee.

HANNON, Judge.

This is an appeal by the State of Nebraska under Neb. Rev. Stat. §§ 29-116 and 29-825 (Cum. Supp. 2000) seeking to reverse a motion to suppress granted by the district court in the prosecution of Thomas Pawling for manufacturing methamphetamine. At the time the evidence was obtained, the defendant was serving a probation sentence which, when issued, contained no provision concerning the State's right to search his person or property. The physical evidence suppressed had been obtained by a search of the defendant's home which was made without a warrant but with the defendant's consent after he was presented with a recent ex parte amendment to his probation order which required him to consent to reasonable searches. The district court also suppressed statements he made during and immediately after the search. I conclude that the amend-

ment to the probation order was a nullity because it was obtained without notice or a hearing, and therefore I affirm the district court's ruling.

## SUMMARY OF EVIDENCE

On September 30, 1999, the defendant was convicted in the county court for Douglas County, Nebraska, of operating a motor vehicle during suspension of his license and of giving false information to the police. He was sentenced to a 12-month term of probation. The probation order is on a form which contains seven specific terms of probation which are usually regarded as "boiler plate" provisions, such as, "1. Refrain from unlawful conduct." These provisions are not significant to this appeal and will not be summarized.

The order then states, "The following special conditions have been added by the Court to further the rehabilitation of the Defendant: ONLY THE SPECIAL CONDITIONS INITIALED BY THE JUDGE APPLY." The form then contains 23 numbered provisions with a line before each. The first special condition concerns fines, costs, restitution, et cetera, and the last one, No. 23, is a blank designated "Other." The only special condition with initials before it is one designated as "Testing." This provision required the defendant to abstain from the use of alcohol or drugs, and further provided for the testing of his blood, breath, or urine at his expense to determine the use of alcohol or drugs. Immediately below the heading "Testing" appears a handwritten word which I would interpret as "monthly." Special condition No. 19, if initialed, would have required the defendant to "[s]ubmit to reasonable search and seizure of premises, person or vehicle by or upon request of the probation officer." The blank before this provision was not initialed by the judge.

The December 23, 1999, order refers to the defendant's previous conviction and his 12-month term of probation and then provides: "It is therefore, considered, adjudged and ordered that: Special Condition #23 of the Order of Probation states: Submit to reasonable search and seizure of premises, person or vehicle by or upon request of the probation officer." (Emphasis in original.) The order goes on to state that the other terms of the probation order remain in force.

The defendant's probation officer was Charlie Martinez. Martinez testified that because one urinalysis test that was performed on the defendant was positive for methamphetamine, he intended to seek an amendment to the probation order. He did not do so until December 23, 1999. On that date, Deputy Sheriff Scott Daugherty called and informed Martinez that the defendant was being investigated for the manufacture of methamphetamine. Martinez reviewed the defendant's file, containing the same information that would have been available to the judge when the defendant was sentenced, and found a report which stated that the defendant had been shopping for ingredients for methamphetamine. Martinez then contacted the sentencing judge over the telephone and informed the judge what was going on with the case—the positive test for methamphetamine, the original facts in the case, and Daugherty's investigation of the defendant for the manufacture of methamphetamine. The judge then signed the probation order of December 23 summarized above.

Martinez testified that after the amendment to the probation order, he attempted to contact the defendant by telephone, but did not succeed. The record does not show how Martinez obtained physical possession of a copy of the amendment.

Daugherty, Deputy Sheriff Theodore Fitzsimmons, and Martinez had a "narcotics briefing" at approximately 1 p.m. on December 23, 1999, in which they discussed "what was going to take place with the search warrant dealing with the amendment to the probation order." Fitzsimmons was dispatched to conduct a traffic stop of the defendant to assist the narcotics unit. Fitzsimmons looked for the defendant and at approximately 2:30 p.m. observed him make a left-hand turn without signaling, but did not observe any other illegal or suspicious conduct on the defendant's part. No search warrant was obtained. Daugherty and Martinez arrived on the scene while Fitzsimmons was conducting a records check. They identified themselves to the defendant and informed him of the amendment to the probation order. Martinez testified that he told the defendant that he, along with the officers, was going to search his house. The defendant was then patted down, and his vehicle was searched, but nothing was found. After he was shown the

amended probation order, but while still at the scene of the traffic stop, the defendant verbally consented to the search of his residence. Pursuant to usual procedures, the defendant was handcuffed before he was placed in the police cruiser and transported to his home.

When they arrived at the defendant's residence, the handcuffs were removed, and the defendant was presented with a form regarding his consent to search his residence. The defendant read and signed the form, with Fitzsimmons witnessing his signature. This form was completed in a fashion that allowed Daugherty and Martinez to search the defendant's residence. The defendant opened and unlocked the gate to his yard, which was enclosed and which contained a pit bull dog. The defendant secured the dog before letting them in the yard. After the house was secured by the officers, Martinez and the officers conducted a search of the house and grounds. Martinez found a tank of ammonia in a trailer in the yard and "heat" containers around the yard. Upon being asked, the defendant stated there was a bag of methamphetamine which he used for himself in a briefcase in the house. Later, the defendant brought the briefcase to the officers. When asked, the defendant admitted the area had been used for the manufacture of methamphetamine. The defendant was also questioned regarding materials he used in the manufacture of methamphetamine. However, the only methamphetamine found was a small amount in a Ziploc bag in the briefcase.

At approximately 3:30 p.m., after the "lab inside of the cargo box" was found, Daugherty questioned the defendant while standing in the backyard, but before he was read his *Miranda* rights. The defendant admitted he was engaged in manufacturing methamphetamine, and he also told them of the location of his "partner in crime's" residence and that at that location, they would find a skid loader the pair had stolen. The defendant was then read his *Miranda* rights about this time, but exactly when with reference to his admissions is not clear from the record.

The defendant moved to suppress the physical evidence as well as the statements he made to the officers. After a hearing, the district court entered a formal order in which it narrated the evidence and found "[a]s a result of the search the defendant

was questioned, and the defendant made certain, arguably inculpatory statements." The trial court recognized the validity of such search-permitting provisions in probation orders and that the sentencing court had authority to amend such orders, but concluded it did not have authority to make such changes without the defendant's knowledge or giving him notice of the change. The court found that the defendant consented to the search after he was told he would be searched as a result of the signed order and was then asked to consent, which he did. Accordingly, the judge specifically found that the defendant did not freely and voluntarily consent to the search. The court also found any statements made as a result of the search were fruits of the illegal search and therefore were inadmissible.

## ASSIGNMENTS OF ERROR

The State alleges the trial court erred in that (1) it lacked jurisdiction because the probation order was final within 30 days and not appealed after that time, (2) the county court was entitled to amend its probation order if it found that the defendant violated the terms of his probation, and (3) the defendant waived his right to object to the search when he made a voluntary waiver of that right.

## STANDARD OF REVIEW

In *State v. Chitty*, 253 Neb. 753, 754, 571 N.W.2d 794, 795-96 (1998), the Nebraska Supreme Court stated:

A trial court's ruling on a motion to suppress, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. In making this determination, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses.

Accord, *State v. Ready*, 252 Neb. 816, 565 N.W.2d 728 (1997); *State v. McCleery*, 251 Neb. 940, 560 N.W.2d 789 (1997); *State v. Konfrst*, 251 Neb. 214, 556 N.W.2d 250 (1996).

In this appeal, several of the controlling issues are answered by resolving questions of law. "Regarding questions

of law, an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below." *State v. Graham*, 259 Neb. 966, 971, 614 N.W.2d 266, 270 (2000). Accord *State v. Reeves*, 258 Neb. 511, 604 N.W.2d 151 (2000).

## ANALYSIS

■ I will start my analysis by recognizing that a provision in a probation order requiring the probationer to consent to a search of real and personal property by law enforcement without a search warrant is valid. See *State v. Lingle*, 209 Neb. 492, 501, 308 N.W.2d 531, 537 (1981) (where provision providing that probationer " 'be subject to the search of his personal and real property at any time, day or night, by any law enforcement or probation officer without the issuance of a search warrant' " was held to have reasonable relation to enforcement of other terms of probation); *State v. Morgan*, 206 Neb. 818, 295 N.W.2d 285 (1980) (where drugs found in search pursuant to provision ordering probationer to submit to search of his person or property at any time by any law enforcement officer, with or without probable cause, were held to support determination that probationer violated probation); *State v. Sievers*, 2 Neb. App. 463, 464, 511 N.W.2d 205, 206 (1994) (where term of defendant's probation by which he agreed to " 'submit my person, place of residence, business and vehicle to search and seizure at any time of the day or night by any law enforcement officer or my probation officer with or without a search warrant' " was held valid). Further, provisions of state law which provide for the search of a probationer's person and property without a warrant have been approved by the U.S. Supreme Court. See *Griffin v. Wisconsin*, 483 U.S. 868, 107 S. Ct. 3164, 97 L. Ed. 2d 709 (1987).

There is language in the above-cited cases to the effect that a provision providing for a search must be applied in a reasonable manner and contribute to the rehabilitation of the probationer. The reasonableness of the search provision is possibly an issue which would have been properly determined by the court imposing the sentence of probation rather than another court who is considering the validity of a search made pursuant to that provision. However, the cases are not clear. I will assume without

deciding that the provision for the search would be reasonable as a rehabilitation provision and would therefore have been valid if it had been in the original order or validly added. In this case, the original order did not contain a provision allowing a search without consent or requiring the defendant to consent to a search, and I do not believe the provision providing so was validly added.

Neb. Rev. Stat. § 29-2260 (Reissue 1995) provides the guidelines for when a sentencing court may consider probation in lieu of imprisonment. The section ends by stating, "When an offender who has been convicted of a crime is not sentenced to imprisonment, the court may sentence him or her to probation." The point being, "probation is a sentence and not part of a quasi-contract wherein the court offers something which the defendant is free to accept or reject." *State v. Lynch*, 223 Neb. 849, 863, 394 N.W.2d 651, 662 (1986). I find no cases involving an attempt by a trial court to change the terms of a probation sentence, except amendments upon a finding that the defendant violated a term of his or her probation as provided in Neb. Rev. Stat. § 29-2268(2)(c) (Reissue 1995). See, e.g., *State v. Morgan, supra*. The effect of that provision in this proceeding will be discussed below.

General notions of the finality of any court order, including a sentence to probation, are encompassed in the following authority: "[T]rial finality with respect to the sentences at issue took place when the sentences were imposed. . . . The district court thus lacked jurisdiction to entertain a motion to modify the sentences." (Citations omitted.) *State v. McNerny*, 239 Neb. 887, 890, 479 N.W.2d 454, 456-57 (1992). In *State v. Vernon*, 218 Neb. 539, 542, 356 N.W.2d 887, 890 (1984), the Nebraska Supreme Court quoted *State v. Kinney*, 217 Neb. 701, 350 N.W.2d 552 (1984), with approval:

> "[P]robation is a *sentence*. It is not a part of a quasi-contract where the court offers something and defendant is free to accept or reject. Secondly, it is clear that an order placing a defendant on probation is a final and appealable order. . . . Finally, our law is settled that a sentence validly imposed takes effect from the time it is pronounced, and a subsequent, different sentence is a nullity. In *State v. Sliva*,

208 Neb. 647, 305 N.W.2d 10 (1981), a sentence that had been imposed was later on the same day set aside, and an appeal was then taken from a later sentence. This court said at 648, 305 N.W.2d at 11: 'The difficulty with all of this, however, is that the sentence which was originally imposed on February 22, 1980, was a final judgment and one which the trial court was not at liberty to vacate. We recently held in the case of *State v. Cousins, ante* p. 245, 247, 302 N.W.2d 731, 732 (1981): " ' "The rule is that a sentence validly imposed takes effect from the time it is pronounced and that a subsequent sentence fixing a different term is a nullity." ' " The rule is not new[.]' . . ."

■ On the basis of this authority, I conclude that insofar as the modification of the sentence of probation was simply a change of the sentencing order, that change is void. "A void sentence is no sentence . . . ." *State v. Wren*, 234 Neb. 291, 294, 450 N.W.2d 684, 687 (1990). It has been a longstanding law in Nebraska that a void judgment may be attacked at any time in any proceeding. *State v. Ryan*, 249 Neb. 218, 543 N.W.2d 128 (1996); *State v. Ewert*, 194 Neb. 203, 230 N.W.2d 609 (1975).

In this case, the State argues that the probation order was entered on September 30, 1999, that the defendant did not appeal within 30 days, and that therefore the order as modified cannot be questioned in the district court. During the time of the defendant's right to appeal the order of September 30, the defendant had no complaint about the order. Fortunately, Nebraska law does not countenance a procedure by which someone can lose a right in court without notice. The unfairness of such a procedure is patent.

■ The only basis for the validity of the county court's order amending the probation order is under the probation statutes. The only provision allowing the sentencing court to amend a probation order is in § 29-2268(2)(c), which provides that if the court finds the probationer did violate a condition of his or her probation, but is of the opinion that revocation of probation is not appropriate, "[t]he probationer [may] be required to conform to one or more additional conditions of probation which may be imposed in accordance with the provisions of sections 29-2246 to 29-2268." Neb. Rev. Stat. §§ 29-2246 to

29-2268 (Reissue 1995 & Cum. Supp. 2000) are the Nebraska Probation Administration Act. The gist of these statutes is that upon a finding that the probationer violated the terms of his or her probation, the court can add any additional terms of probation that it could have imposed in the initial probation order.

Section 29-2262(2)(s) allows as a condition that the probationer "satisfy any other conditions reasonably related to the rehabilitation of the offender." This provision has been interpreted to allow the court to impose on the probationer the obligation to consent to a search of real and personal property by law enforcement, without a search warrant. See, *State v. Lingle*, 209 Neb. 492, 308 N.W.2d 531 (1981); *State v. Morgan*, 206 Neb. 818, 295 N.W.2d 285 (1980); *State v. Sievers*, 2 Neb. App. 463, 511 N.W.2d 205 (1994). It seems clear that if the procedure outlined in the statutes were followed, the county court could have validly added the condition it tried to add, but only after a valid finding that the defendant had violated the original probation order.

Both Martinez, the probation officer, and the county court failed to follow the procedures for amending a probation order as outlined by statute. Section 29-2266 provides that when a probation officer has reasonable grounds to believe a probationer has violated the terms of his or her probation, the officer should file a written report with the sentencing court. Here, Martinez called the judge on the telephone. The same section also provides that the sentencing court may suspend further proceedings, instruct the probation officer to handle the matter informally, or refer the matter to the county attorney. In this case, the judge did neither; rather, the judge modified the probation order on the basis that the defendant had violated the terms of his probation.

Section 29-2267 provides the procedure for revocation of a probation order and requires written notice, a hearing, and proof by clear and convincing evidence that a defendant violated probation. It also provides the probationer with a right to hear and to controvert the evidence as well as to be represented by counsel. This procedure was also ignored by Martinez and the county court when they purported to impose additional conditions on the defendant's probation without any notice or a hearing.

Except for § 29-2267, I am unable to find any authority which could justify the addition of terms to a probation sentence, and the State does not suggest any other basis. The statutes which specify the proper procedure are clearly intended to assure probationers their constitutional rights as recognized in *Morrissey v. Brewer*, 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972), and *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973), and as recognized by the Nebraska Supreme Court in *State v. Jaworski*, 194 Neb. 645, 234 N.W.2d 221 (1975). In the present case, the failure to follow that procedure violated due process rights, and the procedure followed was so flawed that the order is clearly void.

The State also argues that the defendant consented to the search. The evidence clearly establishes that he did so only after being presented with a copy of a void order making his submission to the search a term of his probation. The district court judge found that the defendant's consent was not voluntary. To say the least, this finding of fact is supported by the evidence. In an appeal such as this, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact. *State v. Chitty*, 253 Neb. 753, 571 N.W.2d 794 (1998); *State v. Ready*, 252 Neb. 816, 565 N.W.2d 728 (1997). The trial court's finding on this factual issue is binding on this court; therefore, the State's argument on this issue has no merit.

Accordingly, I conclude that the district court was correct in granting the defendant's motion to suppress.

AFFIRMED.