Judge Pro Tem SCHWARTZMAN
Specially concurs.
I concur in the opinion of this Court, taking note that the entire operation was under the direction of defendant’s probation officer, from the entering and search of Hedgeeock’s apartment to the request to law enforcement to stop and check the vehicle and detain Hedgecoek until he arrived. A probation officer can certainly request the assistance of law enforcement to assist in a probation search and seizure. See State v. Cruz, 144 Idaho 906, 910, 174 P.3d 876, 880 (Ct.App.2007); State v. Vega, 110 Idaho 685, 688, 718 P.2d 598, 601 (Ct.App.1986).
I write separately, however, as I did in Purdum 1, 2008 WL 183377 (Idaho Ct.App.2008) to again note that Hedgecoek’s terms of probation carry the potential of transforming every police officer in the State of Idaho into a de facto probation/parole officer. This raises troubling complications about the permissible scope of a suspicionless detention and/or search when conducted, not by a probation officer involved in an ongoing supervisory relationship making home visits or seeking to interview a subject, but by a police officer/detective in the field who randomly encounters a probationer going about his daily business or otherwise decides to pay a nocturnal “courtesy call” at his/her residence.
*587 The standardized boilerplate language of Hedgecoek’s probationary “consent/waiver” literally permits such searches and seizures, without probable cause, or even suspicion, of the probationer’s person, vehicle or home at any time and place, day or night, by any police officer. The potential for arbitrary, capricious or harassing enforcement is self-evident. See dissent of Justice Bistline in State v. Gawron, 112 Idaho 841, 844-847, 736 P.2d 1295, 1298-1301 (1987) and eases cited therein; see also Roman v. State, 570 P.2d 1235, 1243 (Alaska 1977) and Reichel v. State, 101 P.3d 197, 202 (Alaska Ct.App.2004) (“except when acting at the direction of a parole officer,” general condition of probation giving police officers independent authority to require a probationer to submit to a search violates Alaska Constitution).
Just how far this type of probationary term can be stretched, because of the subject’s diminished expectation of privacy, remains to be seen. See Samson v. California, 547 U.S. 843, 850-856, 126 S.Ct. 2193, 2198-2199, 165 L.Ed.2d 250, 258-262 (2006) (while upholding suspicionless search of parolee on a public street conducted by a police officer, Supreme Court disavowed the proposition that parolees, like prisoners, have no Fourth Amendment rights, and recognized California’s prohibition against “arbitrary, capricious or harassing” parole searches); compare State v. Purdum, 147 Idaho 206, 208, 207 P.3d 182, 184 (2009) (“While the United States Supreme Court has not yet addressed whether a probationer may waive his Fourth Amendment rights through acceptance of probationary search conditions (fn.1), this Court has determined that a probationer’s consent to searches constitutes a waiver of Fourth Amendment rights.”) (citing State v. Gawron, 112 Idaho 841, 736 P.2d 1295 (1987)). Footnote one of Purdum cites to United States v. Knights, 534 U.S. 112, 118, 122 S.Ct. 587, 591, 151 L.Ed.2d 497, 504 (2001) and Samson, 547 U.S. at 852 n. 3, 126 S.Ct. at 2199 n. 3, 165 L.Ed.2d at 259 n. 3 both of which refer to consent in the Schneckloth [v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)] sense of a complete waiver of Fourth Amendment rights. This leaves for possible future consideration such issues as voluntariness, understanding, revocability, and serving the legitimate ends of probation which I only mention in passing.
I suspect that the appellate courts of Idaho have not seen the last of this term of probation.