STATE OF NEBRASKA, APPELLEE, V.
DONNIE GRAHAM, APPELLANT.

614 N.W. 2d 266

Filed July 7, 2000.    No. S-99-1235.

Kelly J. Werts, of Fankhauser, Nelsen & Werts, P.C., for appellant.

Don Stenberg, Attorney General, and Marie Colleen Clarke for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

Donnie Graham appeals his convictions of two counts of distributing marijuana in violation of Neb. Rev. Stat. § 28-416(1)(a) (Reissue 1995). Graham asserts that the district court for Pawnee County erred in denying his motion to suppress and in failing to find that he had been entrapped. We affirm.

## STATEMENT OF FACTS

Investigator Philip Dittbrenner was assigned to the Southeast Area Drug Enforcement Task Force, which covers a six-county area in southeast Nebraska, including Pawnee County. In May 1998, Dittbrenner was working with a confidential informant who agreed to introduce Dittbrenner to persons who might be selling illegal drugs. The informant received a fee of $50 to $100 each time he provided adequate information that led to persons who were selling drugs. Pursuant to such agreement, the informant identified Graham as a person he had known for some time who had dealt in cocaine, methamphetamine, and marijuana sales.

On May 6, 1998, Dittbrenner and the informant went to Graham's home in Pawnee City so that the informant could introduce Dittbrenner to Graham and Dittbrenner could attempt to purchase drugs from Graham. Dittbrenner and the informant arrived at Graham's home in the early afternoon without notice or invitation. The informant introduced Dittbrenner to Graham as "Bill" and falsely told Graham that he worked for "Bill" in a construction business. Neither the informant nor Dittbrenner revealed Dittbrenner's true identity as an investigator. Graham invited Dittbrenner and the informant into his home.

Dittbrenner and the informant remained in Graham's home for approximately 45 minutes to an hour, talking with Graham. During that time, the three individuals drank beer, Graham offered Dittbrenner marijuana to smoke, and Dittbrenner simulated smoking the marijuana. Toward the end of the visit, Dittbrenner asked Graham whether he had any marijuana to sell. Graham replied that at the time, all he had was a small baggie of marijuana that he would sell to Dittbrenner for $10. Dittbrenner

purchased the baggie and inquired whether he could get more marijuana. Graham told Dittbrenner he would attempt to find some more marijuana, but no specific plan was made at that time.

The next day, May 7, 1998, the informant called Graham to inquire as to an additional purchase of marijuana. Graham advised the informant and Dittbrenner that he could get them a quarter ounce of marijuana, but that they would need to travel to get it. Dittbrenner and the informant went to Graham's house, then proceeded with Graham to the home of Lynn deKoning in rural Pawnee County. On the way, Dittbrenner gave Graham $50, which was the agreed-upon price for the quarter ounce of marijuana. When they arrived at the deKoning residence, Dittbrenner and the informant waited in the car. Graham went to the house and brought out an individual he introduced to Dittbrenner and the informant as "Lynn." Graham and Lynn went into the residence, and a short time later, Graham returned to the car and handed Dittbrenner a baggie which, Dittbrenner estimated, contained approximately a quarter ounce of marijuana.

The baggies given by Graham to Dittbrenner were sent to the Nebraska State Patrol Criminalistics Laboratory for analysis. Testing revealed that both baggies contained marijuana.

Graham was arrested, and a preliminary hearing was held in the county court for Pawnee County on December 3, 1998. The county court found that the State had submitted sufficient evidence to establish probable cause that the two charged offenses of distributing marijuana had been committed and that reasonable grounds existed to believe Graham had committed those offenses. Graham was bound over to district court for trial on the charges.

On June 16, 1999, Graham filed a motion to suppress as evidence

> any and all observations made and items of evidence seized from [Graham's] residence by law enforcement officers during the presence of law enforcement officers at said residence on or about May 7, 1998 [sic] and also suppressing as evidence any and all observations made regarding [Graham] and items of evidence seized from a pur-

ported drug purchase and sale on or about May 8, 1998 [sic].

Graham asserted that Dittbrenner's entry into his home on May 6, 1998, using a confidential informant and a false identity to obtain Graham's consent to enter violated his right to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment to the U.S. Constitution and by Neb. Const. art. I, § 7.

Graham waived jury trial, and on July 28, 1999, the matter came on for hearing on the motion to suppress and for bench trial. For purposes of the motion and trial, the parties stipulated that the testimony of Dittbrenner at the preliminary hearing would be admitted and received into evidence, and Graham waived further cross-examination of Dittbrenner. Graham waived foundation for the admission of the Nebraska State Patrol Criminalistics Laboratory reports, provided that such reports would not be admitted into evidence if the court sustained his motion to suppress. At the bench trial, Graham argued a defense of entrapment, asserting that the record did not show any predisposition on his part to commit the crimes charged. The State argued in response that there was no entrapment, as Graham had not resisted Dittbrenner's request to purchase marijuana.

On August 11, 1999, the district court entered a ruling denying Graham's motion to suppress and, with respect to the substance of the charges, found Graham guilty of both counts of distributing marijuana in violation of § 28-416(1)(a). On October 14, the district court sentenced Graham to imprisonment for not less than 36 months and not more than 60 months on each count to run concurrently. Graham appealed the denial of the motion to suppress and his convictions.

### ASSIGNMENTS OF ERROR

Graham asserts that the district court erred in (1) denying his motion to suppress and (2) failing to find that he had been entrapped.

### STANDARD OF REVIEW

A trial court's ruling on a motion to suppress based on the Fourth Amendment, apart from determinations of reasonable

suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. *State v. Bjorklund*, 258 Neb. 432, 604 N.W.2d 169 (2000). In making a determination whether a trial court's ruling on a motion to suppress is to be upheld, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes that the trial court is the finder of fact and takes into consideration that it observed the witnesses. *Id.*

■ Regarding questions of law, an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *State v. Reeves*, 258 Neb. 511, 604 N.W.2d 151 (2000).

## ANALYSIS

*Motion to Suppress.*

Graham asserts that the district court erred in denying his motion to suppress evidence obtained as the result of Dittbrenner's entry into his home on May 6, 1998. Graham argues that such governmental entry into his home which was gained by use of false pretenses on the part of the State's agent violated his right to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment to the U.S. Constitution and by Neb. Const. art. I, § 7. Because we conclude that the Fourth Amendment and Neb. Const. art. I, § 7, are not implicated by the undisputed facts, we affirm the district court's denial of Graham's motion to suppress.

■ We note that in its ruling on Graham's motion to suppress, the district court did not articulate its specific findings but simply stated that "[t]he court finds that the defendant's Motion to Suppress should be overruled." We have directed that "district courts shall articulate in writing or from the bench their general findings when denying or granting a motion to suppress." *State v. Osborn*, 250 Neb. 57, 67, 547 N.W.2d 139, 145 (1996). We noted in *Osborn* that the degree of specificity required would vary from case to case. In the instant case, the district court's articulation of the specific basis of its denial of Graham's motion to suppress would have been helpful to our review on appeal. However, the only evidence offered and received for the

district court's consideration of Graham's motion to suppress was Dittbrenner's testimony from the preliminary hearing. Because there is no conflict in the evidence relevant to the motion, we are able to review the district court's ultimate determination of the motion to suppress from the record in this case. Accordingly, we proceed to consideration of the merits of the motion to suppress.

The uncontroverted evidence establishes that based on the informant's identification of Graham as a person who dealt in illegal drugs, Dittbrenner arranged to meet Graham. Dittbrenner used a false identity to gain Graham's consent to enter his house. After Dittbrenner and the informant had been inside Graham's house for some time, Graham voluntarily offered them some marijuana to smoke. When Dittbrenner later asked to purchase some marijuana from Graham, Graham readily offered to sell what he had and agreed to try to locate more. The following day, Graham again readily responded to Dittbrenner's request by accepting Dittbrenner's $50 and taking Dittbrenner to a location where Graham obtained marijuana, which he then sold to Dittbrenner.

Under the facts of this case, there was neither a search nor a seizure as those concepts are understood under the Fourth Amendment and Neb. Const. art. I, § 7. In cases "where entry by an undercover agent is effected solely by the invitation of the defendant, albeit under a misconception as to the agent's identity and purpose, there is no Fourth Amendment . . . activity so long as the agent does not exceed the scope of the invitation." *People v Catania*, 427 Mich. 447, 454, 398 N.W.2d 343, 346 (1986). See, also, *Lewis v. United States*, 385 U.S. 206, 87 S. Ct. 424, 17 L. Ed. 2d 312 (1966). In the instant case, Graham voluntarily allowed Dittbrenner and the informant into his home without any coercion on their part, compare *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973) (Fourth Amendment is implicated where consent is gained via coercion), and once inside, Dittbrenner's conduct did not exceed the scope for which he had gained admittance.

The facts show that once inside Graham's house, Dittbrenner observed nothing other than that which Graham contemplated. While recognizing that the home is accorded the full range of Fourth Amendment protections, the U.S. Supreme Court has

stated that when the home is converted into a commercial center "for purposes of transacting unlawful business, that business is entitled to no greater sanctity than if it were carried on in a store, a garage, a car, or on the street." *Lewis v. United States*, 385 U.S. at 211. In the instant case, Graham initiated the transaction of unlawful drug activity in his home by offering Dittbrenner and the informant marijuana to smoke. Upon Dittbrenner's inquiry, Graham readily agreed to sell the marijuana he had on hand and to attempt to locate additional marijuana for Dittbrenner to purchase.

Under the facts of the instant case, we conclude there was no Fourth Amendment activity by Dittbrenner, and therefore, no violation of Graham's right to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment to the U.S. Constitution and by Neb. Const. art. I, § 7. We therefore conclude that the district court did not err in denying Graham's motion to suppress, and we reject Graham's first assignment of error.

*Entrapment.*

As his second assignment of error, Graham argues generally that the district court erred in not finding that the evidence established his entrapment defense. In particular, Graham argues that the State offered no evidence to show that he had a predisposition to sell marijuana. Because we conclude, as more fully outlined below, that Graham did not carry his burden of going forward with evidence of inducement, this assignment of error is without merit.

■ Under Nebraska law, entrapment is " 'the governmental inducement of one to commit a crime not contemplated by the individual, in order to prosecute that individual for the commission of the criminal offense.' " *State v. Connely*, 243 Neb. 319, 330, 499 N.W.2d 65, 73 (1993), quoting *State v. Stahl*, 240 Neb. 501, 482 N.W.2d 829 (1992). In *Sherman v. United States*, 356 U.S. 369, 372, 78 S. Ct. 819, 2 L. Ed. 2d 848 (1958), the U.S. Supreme Court stated: "To determine whether entrapment has been established, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal."

■ It has been observed that there are two tests for analyzing the existence of entrapment: " 'the origin of intent' " test and the

"objective" test. Note, *Entrapment*, 73 Harv. L. Rev. 1333, 1335 (1960). Nebraska has adopted the "origin of intent" test to determine whether a defendant was entrapped. Under this test, the defendant was entrapped if (1) the government induced the defendant to commit the offense charged and (2) the defendant's predisposition to commit the criminal act was such that the defendant was not otherwise ready and willing to commit the offense on any propitious opportunity. *State v. Connely, supra; State v. Stahl, supra.*

▪ Entrapment is a defense consisting of conjunctive elements—governmental inducement to commit a crime and a lack of criminal predisposition in the defendant. *State v. Swenson,* 217 Neb. 820, 352 N.W.2d 149 (1984). Because entrapment is in the nature of an affirmative defense, the burden of going forward with evidence of the element of governmental inducement is on the defendant. *State v. Connely, supra; State v. Stahl, supra.*

▪ In assessing whether the defendant has satisfied his or her burden of going forward with evidence of governmental inducement, the initial duty of the court is to determine whether there is sufficient evidence that the government has induced the defendant to commit a crime. *State v. Swenson, supra.* This determination is made as a matter of law, and the defendant's evidence of inducement must be more than a scintilla. *Id.* To be more than a scintilla, evidence cannot be vague, conjectural, or the mere suspicion about the existence of a fact, but must be real and of such quality as to induce conviction. *Id.* For the reasons recited below, we conclude that Graham's evidence of the element of inducement was not more than a scintilla of evidence, and thus, he did not satisfy his burden of going forward. Accordingly, we need not and do not analyze the sufficiency of the evidence of the second element of entrapment, predisposition. *Kelly v. Kelly,* 246 Neb. 55, 516 N.W.2d 612 (1994) (appellate court not obligated to engage in analysis not needed to adjudicate case and controversy before it).

In the present case, Graham argues that Dittbrenner and the informant contacted him on their own initiative to gain admittance to his home, that he did not offer to sell marijuana to Dittbrenner prior to Dittbrenner's request, and that in response to Dittbrenner's request, Graham said that he had only the bag-

gie from which the three had been smoking. Graham claims this evidence was sufficient as to inducement. In response to Graham's argument, the State asserts, inter alia, that Graham did not meet his initial burden to show governmental inducement. We agree with the State.

The thrust of Graham's argument with respect to inducement is that because Dittbrenner initiated the marijuana sale, Graham has, therefore, met his burden of establishing that the State induced the crimes. Contrary to Graham's assertion, in *State v. Swenson*, we specifically stated that "[t]he lone fact that an undercover police officer, personally or through an informant, offers to purchase or obtain marijuana is not an inducement to commit a crime resulting in the availability of entrapment as a defense for the seller of the marijuana." 217 Neb. at 825, 352 N.W.2d at 153. See, also, *State v. Lampone*, 205 Neb. 325, 328, 287 N.W.2d 442, 444 (1980) (observing that "where a person already has the readiness or willingness to violate the law, the fact that an officer or agent provides a favorable opportunity for the violation does not constitute entrapment").

Our holding in *State v. Swenson*, that the lone fact of an offer to purchase is not an inducement resulting in the availability of the entrapment defense, is consistent with other authorities considering the element of inducement. See, generally, *Sherman v. United States*, 356 U.S. 369, 78 S. Ct. 819, 2 L. Ed. 2d 848 (1958) (in case in which entrapment was established, it was observed that undercover agent's merely affording opportunity to commit offense does not constitute entrapment). See, also, *State v. Nelsen*, 89 S.D. 1, 228 N.W.2d 143 (1975); *Hawthorne v. State*, 43 Wis. 2d 82, 168 N.W.2d 85 (1969); *People v Margaret Jones*, 48 Mich. App. 334, 210 N.W.2d 396 (1973). In connection with entrapment in drug prosecutions, other authorities have identified four principal "inducements": appeals to friendship, sympathy, offers of excessive amounts of money, and appeals to the seller's "addiction." See, generally, *State v. Nelsen, supra*. None of these inducements is present in the instant case. To establish that a defendant was induced to violate the law, the cases further indicate that an inducement must be undue or prolonged, consisting of persistent pressure or insistent persuasion. *Id.* See, also, *United States v. Glaeser*, 550 F.2d 483

(9th Cir. 1977). The evidence fails to show that any such pressures were brought to bear on Graham. In sum, Graham's evidence relating to inducement was limited to the fact that Dittbrenner offered to purchase marijuana, which evidence was not more than a scintilla of evidence of inducement and, therefore, was insufficient to carry Graham's burden of going forward with respect to the first element of the entrapment defense. The district court's rejection of the entrapment defense was correct, and this assignment of error is without merit.

## CONCLUSION

We conclude that Dittbrenner's entry into Graham's home did not implicate Graham's rights under the Fourth Amendment and Neb. Const. art. I, § 7, and that the district court, therefore, properly denied his motion to suppress evidence obtained as a result of such entry. We further conclude that Graham did not offer more than a scintilla of evidence of the element of inducement and, therefore, failed to meet his burden of going forward with sufficient evidence to support an entrapment defense. The district court's rulings were correct, and we, therefore, affirm Graham's convictions.

AFFIRMED.