STATE OF NEBRASKA, APPELLEE, V.
SAMSON ALDACO, APPELLANT.
710 N.W.2d 101

Filed March 3, 2006.   No. S-05-587.

Mark A. Weber and Kylie A. Wolf, of Walentine, O'Toole, McQuillan & Gordon, for appellant.

Jon Bruning, Attorney General, Don Kleine, and Michael W. Jensen for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

MCCORMACK, J.

## NATURE OF CASE

Samson Aldaco was convicted of first degree murder, use of a deadly weapon to commit a felony, possession of a deadly weapon by a felon, and possession of a controlled substance for his actions on December 7, 2001. Aldaco was sentenced to life imprisonment for murder in the first degree, 10 years' imprisonment for use of a deadly weapon to commit a felony, 10 years' imprisonment for possession of a deadly weapon by a felon, and 1 year's imprisonment for possession of a controlled substance. We are presented with Aldaco's appeal of his convictions and sentences.

## BACKGROUND

Testimony adduced at trial established that in December 2001, Aldaco contacted Enrique Ramirez, Paul Hernandez, Jacinto Martinez, and Ray Lara to accompany him from Garden City, Kansas, to Omaha, Nebraska, to collect money owed to him from

his illegal drug business. Aldaco paid Hernandez, Martinez, and Lara each $200 for helping him.

On December 7, 2001, Ramirez, Hernandez, Martinez, and Lara met Aldaco at a hotel in Omaha, where Aldaco had reserved a room. Thereafter, the men drove to the residence of Dale Herman to collect money Herman owed Aldaco. Pursuant to Aldaco's instructions, each man carried either his own gun or a gun provided to him by Aldaco. Ramirez testified at trial that the men carried guns in an attempt to scare the individuals in the residence and take money from them. According to Aldaco's plan, Ramirez and Martinez entered the basement of the residence where Herman was staying, which was accessible only by a separate outside entrance, to see if Herman was there, and Aldaco and Hernandez entered the upstairs of the residence. Lara was supposed to be located outside the residence as a lookout.

Ramirez and Martinez both entered the basement brandishing their weapons. In the basement were six occupants, including Herman. Ramirez located Herman and, at gunpoint, took him upstairs to where Hernandez and Aldaco were located. Upon entering the upstairs of the residence, Herman was forced to the floor and a gun was held to his head. While he was lying on the floor, Herman was threatened and questioned regarding the money he owed Aldaco. Herman was also told that he "had until 2:00 the next day" to pay Aldaco $2,000.

While Ramirez was upstairs with Herman and Aldaco, Hernandez went to the basement where he brandished his weapon and ordered the remaining occupants to get on the floor face down. While the individuals were on the floor, Hernandez demanded their wallets, money, and drugs. Hernandez then took the wallets from the individuals, while Martinez provided coverage by pointing his and Hernandez' guns at the individuals.

At some point after the wallets were taken, Ramirez returned to the basement and found the occupants lying face down on the floor. After Ramirez returned to the basement, Hernandez left and Lara entered shortly thereafter. Upon entering the basement, Lara began yelling at the individuals on the floor, demanded their wallets, and kicked and pistol-whipped them as he patted them down. Stace Straw, one of the victims on the floor who was

being patted down, began to struggle with Lara. During this altercation, Lara fatally shot Straw in the head.

After Lara shot Straw, the men left the residence and eventually met at a casino in Iowa, pursuant to Aldaco's instructions. After meeting in a hotel room reserved by Aldaco, Aldaco, Ramirez, and Hernandez left in Aldaco's vehicle to collect Aldaco's luggage from another hotel. On the way, Aldaco was pulled over by Omaha police for driving without his headlights illuminated. The officer was subsequently advised that the vehicle and occupants matched the description of the vehicle and individuals involved in an earlier shooting. After assistance arrived, officers conducted a high-risk felony stop and all three men in the vehicle were arrested. Upon searching the vehicle, officers found a Ruger 9-mm handgun, a Beretta .40-caliber handgun, and a Taurus 9-mm handgun. Officers also found a baggie containing a white, powdery substance which tested positive for 17.2 grams of methamphetamine and dimethyl sulfone.

## PROCEDURAL HISTORY

The State filed an information charging Aldaco with murder in the first degree. Aldaco's attorney filed a motion to suppress. On the date the matter came on for hearing, Aldaco's attorney was granted leave to withdraw as counsel due to a conflict. Another attorney was then appointed to represent Aldaco, and the hearing on the motion to suppress was continued until further notice. Aldaco's new attorney filed motions to suppress the evidence obtained as a result of the stop and search of Aldaco's vehicle. Evidentiary hearings on the motions were concluded on March 21, 2003. At the conclusion of the proceedings, the parties were given the opportunity to submit briefs to the trial court and a trial date was set for June 2.

On April 18, 2003, Aldaco filed a pro se motion for discovery. On Aldaco's motion, the trial was continued until September 29. On August 21, the trial court entered an order overruling the motions to suppress. Aldaco filed a pro se notice of appeal of the denial of his motions to suppress. The trial court conducted a "status hearing," at which hearing it determined that since Aldaco had filed an appeal of the denial of his motions, the trial court was without jurisdiction to proceed to trial on the date

scheduled. The Nebraska Court of Appeals dismissed Aldaco's appeal. See *State v. Aldaco*, 12 Neb. App. lvi (No. A-03-1028, Oct. 1, 2003).

After the matter was remanded back to the trial court, a new trial date was set for January 5, 2004. During the pretrial conference, the trial court addressed the question of whether the requirement of a speedy trial had been conformed with and found that, for good cause, January 5 was the earliest the matter could be set for trial.

On January 2, 2004, Aldaco filed a motion to discharge on the ground that his right to a speedy trial had been violated. Aldaco's trial commenced on January 5. On that date, the court orally overruled Aldaco's motion to discharge, but did not enter a written order to that effect. The matter was then tried before a jury. During the cross-examination of a witness, Aldaco sought leave of the court to question a witness on his own. Aldaco was advised by the court that his attorney would decide what questions should be asked, and Aldaco then indicated to the court that he did not want to represent himself. At that point, Aldaco expressed for the first time his concern that his attorney had a conflict of interest as a result of his prior representation of the victim Straw's brother. Aldaco's attorney explained to the court that he had represented Straw's brother in connection with driving under suspension in a different matter which had been resolved and that he was not Straw's brother's attorney. Aldaco's attorney also explained that he had never had any dealings with Straw. Following a brief discussion on the matter, the trial court found that Aldaco had failed to show a conflict of interest.

The jury found Aldaco guilty of all charges. Aldaco filed a motion for new trial, and while the motion for new trial was still pending, Aldaco filed a pro se notice of appeal regarding the denial of his motion to discharge. This appeal was dismissed by the Court of Appeals for lack of a file-stamped order overruling the motion to discharge. See *State v. Aldaco*, 12 Neb. App. lxxix (No. A-04-155, Mar. 18, 2004). Thereafter, the trial court entered an order dated April 28, 2004, overruling Aldaco's motion to discharge. Aldaco then filed an appeal of the trial court's April 28 order, which this court summarily affirmed. See *State v. Aldaco*, 269 Neb. xxi (No. S-04-645, Jan. 12, 2005). On

April 12, 2005, Aldaco's sentencing hearing was held. At that time, the trial court orally overruled Aldaco's pending motion for new trial. The court then sentenced Aldaco to life imprisonment for murder in the first degree, 10 years' imprisonment for use of a deadly weapon to commit a felony, 10 years' imprisonment for possession of a deadly weapon by a felon, and 1 year's imprisonment for possession of a controlled substance. Counts I, III, and IV were ordered to be served concurrently, and count II was ordered to be served consecutively. Aldaco was given credit for 1,221 days previously served. On May 6, Aldaco filed the present appeal, and on May 11, the trial court entered an order overruling Aldaco's motion for new trial.

## ASSIGNMENTS OF ERROR

Aldaco assigns the following errors: (1) Aldaco was denied effective assistance of counsel, (2) Aldaco's conviction is not supported by the evidence, (3) the trial court erred in imposing excessive sentences, and (4) the trial court erred in overruling Aldaco's motion to discharge on speedy trial grounds.

## STANDARD OF REVIEW

The instant case presents four distinct issues with different standards of review. We, therefore, set forth the appropriate standard of review in the individual sections of our analysis.

## ANALYSIS

### INEFFECTIVE ASSISTANCE OF COUNSEL

In his first assignment of error, Aldaco claims the trial court erred in finding that Aldaco's defense counsel competently represented him at trial. Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact. *State v. Smith*, 269 Neb. 773, 696 N.W.2d 871 (2005). When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. *Id.* Whether a defendant's lawyer's representation violates a defendant's right to representation free from conflicts of interest is a mixed question of law and fact that an appellate court reviews independently of the lower court's decision. See, *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct.

2052, 80 L. Ed. 2d 674 (1984); *U.S. v. Infante*, 404 F.3d 376 (5th Cir. 2005). See, also, *State v. Smith, supra.*

■ Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington, supra*, the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense. *State v. Van*, 268 Neb. 814, 688 N.W.2d 600 (2004). "As a general matter, a defendant alleging a Sixth Amendment violation must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Mickens v. Taylor*, 535 U.S. 162, 166, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002), quoting *Strickland v. Washington, supra.*

But there is an exception to this general rule. The probable effect on the outcome of the proceeding is assumed where assistance of counsel has been denied entirely, or during a critical stage of the proceeding. When that has occurred, the likelihood that the verdict is unreliable is so high that a case-by-case inquiry is unnecessary. See *Mickens v. Taylor, supra.* But only in circumstances of that magnitude do we forgo individual inquiry into whether counsel's inadequate performance undermined the reliability of the verdict. See *id.*

Circumstances of that magnitude may arise when the defendant's attorney actively represented conflicting interests. *Id.* Where defense counsel is forced to represent codefendants over counsel's timely objection, reversal is required, unless the trial court has determined that there is no conflict. See *Holloway v. Arkansas*, 435 U.S. 475, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978). In the absence of an objection, the court has a duty to inquire into a potential conflict of interest only when the trial court knows or reasonably should know that a particular conflict exists—which is not to be confused with a situation in which the trial court is aware of a vague, unspecified conflict of interest, such as that which inures in almost every instance of multiple representation. See, *Wood v. Georgia*, 450 U.S. 261, 101 S. Ct. 1097, 67 L. Ed. 2d 220 (1981); *Cuyler v. Sullivan*, 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980). But even where the trial court fails to inquire into a potential conflict, prejudice will be presumed only if the conflict has significantly affected counsel's performance,

thereby rendering the verdict unreliable, even though *Strickland* prejudice cannot be shown. *Mickens v. Taylor, supra.* See, also, *Cuyler v. Sullivan, supra.*

Here, Aldaco contends that defense counsel was ineffective in that the attorney had a conflict of interest due to the attorney's prior representation of Straw's brother in an unrelated matter. Aldaco also contends that he was denied his right to effective assistance of counsel because the trial court failed to inquire into the alleged conflict of interest.

■ A review of the record clearly demonstrates that the trial court inquired into the potential conflict of interest stemming from defense counsel's prior representation of Straw's brother and that the court reasonably concluded that the prior representation did not create a conflict of interest. Defense counsel represented Straw's brother in connection with an unrelated traffic matter at least more than 1 year prior to his representation of Aldaco. The record further reflects that at no time did the attorney have any dealings with Straw. An "actual conflict of interest," for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance. *Mickens v. Taylor, supra.* Based upon our review of the record, we find no evidence that counsel was affected by a conflict of interest. Thus, there is no evidence that counsel's performance was deficient, nor is there any basis for a presumption of prejudice pursuant to *Cuyler v. Sullivan, supra.* Aldaco's first assignment of error is without merit.

### SUFFICIENCY OF EVIDENCE

In his second assignment of error, Aldaco claims that the evidence presented at trial was insufficient to sustain his conviction for first degree murder. Aldaco was charged with first degree murder for the death of Straw based upon either deliberate and premeditated murder or death during the perpetration or attempt to perpetrate a robbery. On appeal, Aldaco specifically contends the evidence fails to establish that a robbery was intended or that there was a plan to hurt or kill anyone.

■ When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in

the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Muro*, 269 Neb. 703, 695 N.W.2d 425 (2005). In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. *State v. Sanders*, 269 Neb. 895, 697 N.W.2d 657 (2005). Such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Muro, supra; State v. Weaver*, 267 Neb. 826, 677 N.W.2d 502 (2004). Only where evidence lacks sufficient probative force as a matter of law may an appellate court set aside a guilty verdict as unsupported by evidence beyond a reasonable doubt. *State v. Leonor*, 263 Neb. 86, 638 N.W.2d 798 (2002).

■ One may commit first degree murder either by committing premeditated murder or by killing another person while in the commission of certain felonies. Neb. Rev. Stat. § 28-303 (Reissue 1995), the version in effect at the time of Straw's murder, provided in relevant part, "[a] person commits murder in the first degree if he kills another person . . . (2) in the perpetration of or attempt to perpetrate any sexual assault in the first degree, arson, robbery, kidnapping, hijacking of any public or private means of transportation, or burglary . . . ." Under § 28-303, a specific intent to kill is not required to constitute felony murder, only the intent to do the act which constitutes the felony in question. See, *State v. Dixon*, 237 Neb. 630, 467 N.W.2d 397 (1991); *State v. Bradley*, 210 Neb. 882, 317 N.W.2d 99 (1982).

Viewed in the light most favorable to the prosecution, the record reflects that Aldaco orchestrated a plan whereby Hernandez, Martinez, Ramirez, and Lara drove from Kansas to Herman's residence in Omaha in order to collect money owed to Aldaco. Pursuant to a request by Aldaco, all five men carried with them either their own gun or a gun provided by Aldaco. At trial, Ramirez testified that one of their purposes for being at the residence where Herman was staying was to take money from the individuals. In the basement, Straw and the other individuals were forced to lie face down on the floor and were ordered not

to move, or they would be killed. While these individuals were lying on the floor, money was demanded of them and their wallets were taken. Thereafter, Lara began physically assaulting the individuals and ultimately shot and killed Straw.

A person commits robbery if, with the intent to steal, he or she forcibly, or by putting in fear, takes from the person or another any money or personal property of any value whatsoever. Neb. Rev. Stat. § 28-324 (Reissue 1995). "Steal" is commonly understood to mean taking without right or leave with intent to keep wrongfully. See *State v. Blotzer*, 188 Neb. 143, 195 N.W.2d 199 (1972). The law is settled that when the sufficiency of the evidence as to criminal intent is questioned, independent evidence of specific intent is not required. Rather, the intent with which an act is committed is a mental process and may be inferred from the words and acts of the defendant and from the circumstances surrounding the incident. *State v. Leonor, supra.*

Based on the evidence, we conclude that a rational trier of fact could have found that a robbery was committed and that the essential elements of the crime of first degree murder were proved beyond a reasonable doubt. Aldaco's second assignment of error is, therefore, without merit.

### EXCESSIVENESS OF SENTENCES

Aldaco next claims that the trial court erred when it sentenced him to life imprisonment for first degree murder, 10 years' imprisonment for use of a deadly weapon to commit a felony, 10 years' imprisonment for possession of a deadly weapon by a felon, and 1 year's imprisonment for possession of a controlled substance. First degree murder is a Class I felony punishable by death, or a Class IA felony punishable by life imprisonment. Neb. Rev. Stat. §§ 28-105 (Cum. Supp. 2002) and 28-303. Use of a deadly weapon to commit a felony is a Class III felony punishable by 1 to 25 years' imprisonment, a $25,000 fine, or both. § 28-105 and Neb. Rev. Stat. § 28-1205(2)(a) (Reissue 1995). Possession of a deadly weapon by a felon is a Class III felony punishable by 1 to 25 years' imprisonment, a $25,000 fine, or both. § 28-105 and Neb. Rev. Stat. § 28-1206(3)(b) (Reissue 1995). Possession of a controlled substance is a Class IV felony punishable by a maximum of 5 years' imprisonment, a $10,000

fine, or both. § 28-105 and Neb. Rev. Stat. § 28-416(3) (Cum. Supp. 2002).

A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. *State v. Losinger*, 268 Neb. 660, 686 N.W.2d 582 (2004). An abuse of discretion occurs when a sentencing court's reasons or rulings are clearly untenable and unfairly deprive the litigant of a substantial right and a just result. *Id.*

In considering a sentence to be imposed, the sentencing court is not limited in its discretion to any mathematically applied set of factors. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Factors a judge should consider in imposing a sentence include the defendant's age, mentality, education, experience, and social and cultural background, as well as his or her past criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime. *Id.*

Aldaco argues that the trial court failed to consider his age, mentality, education, experience, social and cultural background, past criminal record, motivation for the offense, nature of the offense, amount of violence involved in the crime, and his character.

At sentencing, the trial court stated:

> The Court has reviewed your record. As I mentioned, I'm quite familiar with the circumstances of what happened. You may have not pulled the trigger in this matter, but you were as guilty if not more guilty than the one who pulled the trigger. You were the leader of this group. You were the one that brought these people up here to Nebraska to collect your drug debt or whatever it was. You put the ball in motion which eventually cost the victim his life.

The crimes involved in the instant case involved a violent, senseless incident which resulted in the death of an individual. As noted by the trial court, while Aldaco may not have pulled the trigger, it was he that "put the ball in motion" which led to Straw's death. The trial court, which reviewed the record and

was familiar with the circumstances of the case, imposed sentences which are within the statutory limitations. Considering the totality of the circumstances, we conclude that the trial court did not abuse its discretion in imposing the sentences.

## SPEEDY TRIAL

In his final assignment of error, Aldaco contends he was denied his right to a speedy trial.

Neb. Rev. Stat. § 29-1207 (Reissue 1995) provides that every person indicted or informed against for any offense shall be brought to trial within 6 months. If a defendant is not brought to trial before the running of the time for trial, as extended by excluded periods, he or she shall be entitled to his or her absolute discharge from the offense charged. Neb. Rev. Stat. § 29-1208 (Reissue 1995); *State v. Baker*, 264 Neb. 867, 652 N.W.2d 612 (2002). See *State v. Washington*, 269 Neb. 728, 695 N.W.2d 438 (2005).

On January 5, 2004, the trial court orally overruled Aldaco's motion to discharge, and the matter then proceeded to trial. On February 2, Aldaco filed a pro se notice of appeal of the trial court's decision to overrule Aldaco's motion to discharge. This appeal was dismissed by the Court of Appeals for lack of jurisdiction because a file-stamped order dismissing the motion to discharge had not been entered by the trial court. See *State v. Aldaco*, 12 Neb. App. lxxix (No. A-04-155, Mar. 18, 2004). Aldaco did not seek further review of the Court of Appeals' ruling. The trial court entered a written order dated April 28, 2004, overruling Aldaco's motion to discharge. Aldaco appealed that order on May 21.

In *State v. Ward*, 257 Neb. 377, 384, 597 N.W.2d 614, 619 (1999), *disapproved on other grounds, State v. Feldhacker*, 267 Neb. 145, 672 N.W.2d 627 (2004), we stated:

> [W]here a motion to discharge on speedy trial grounds is submitted to a trial court, that motion is inferentially denied where the trial court proceeds to trial without expressly ruling on the motion. At that point, the denial of the defendant's motion is a final, appealable order, and the defendant must secure his or her rights to appellate review by filing a timely notice of appeal.

Pursuant to *State v. Ward, supra,* the trial court's decision overruling Aldaco's motion to discharge was appealable on January 5, 2004, after the court verbally overruled the motion and proceeded to trial. Thereafter, Aldaco had 30 days in which to file an appeal. Although Aldaco filed a pro se notice of appeal on February 2, within the 30-day period, that appeal was dismissed, and Aldaco did not seek further review of that decision with this court. Regardless of whether Aldaco's February 2 appeal should have been dismissed, both his May 21, 2004, and his May 6, 2005, appeals are untimely challenges of the denial of his motion to discharge.

## CONCLUSION

For the reasons discussed herein, we affirm Aldaco's convictions and sentences.

AFFIRMED.