STATE OF NEBRASKA, APPELLEE, V.
TIMOTHY MURPHY, APPELLANT.
716 N.W.2d 453

Filed June 6, 2006. No. A-05-881.

Timothy L. Ashford for appellant.

Jon Bruning, Attorney General, and George R. Love for appellee.

INBODY, Chief Judge, and IRWIN and CARLSON, Judges.

INBODY, Chief Judge.

## INTRODUCTION

Timothy Murphy appeals his conviction for conspiracy to commit first degree sexual assault on a child and the sentence imposed thereon. For the reasons set forth herein, we affirm.

## STATEMENT OF FACTS

On October 7, 2004, Omaha police officer David G. Rieck, of the vice unit, began an investigation of Michelle Royce after

complaints were made that she was a prostitute. Acting under-cover, Rieck met with Royce in a hotel room where they engaged in a conversation wherein Royce mentioned that she had a client who wanted to have sex with underage girls. Royce was arrested for soliciting prostitution and massaging without a license. After Royce's arrest, she agreed to participate in the investigation of the client that wanted sex with underage girls. While no specific promises or inducements were made for Royce's cooperation, the police did agree to speak with the prosecutor if she cooperated.

On October 7, 2004, attempts to contact Murphy failed because of misdialing Murphy's telephone number. The following Monday, October 11, Royce called Murphy and left a voice mail message. The following day, officers met with Royce and set up a recording device on her telephone. The police instructed Royce to convey to Murphy that she found what he was looking for, to ask Murphy what he wanted to do with the underage girl, to try to get Murphy to state what he was willing to spend to have sex with the underage girl, and to ask Murphy if he wished to use condoms or not. During the recorded conversation, which occurred at approximately 11:11 a.m., Murphy asked, "How old?" to which Royce responded, "11," and Murphy replied, "Perfect." Murphy agreed to a price of $200 for the underage girl and stated that he did not want to use a condom. The encounter was to occur at Royce's residence during Murphy's lunch hour.

At 11:28 a.m., approximately 17 minutes after the initial recorded telephone contact, Murphy called back to confirm the meeting was going to take place over his lunch hour. This telephone call was not recorded because the tape recorder did not work. Murphy called Royce back again at 11:51 a.m. and asked if the $200 included oral sex and asked if "it was a setup." Rieck was able to listen to Murphy's statements in this conversation, but this telephone call was not recorded because officers did not believe that there would be any further telephone communications, so recording equipment had been left in their vehicles.

Murphy arrived at Royce's residence shortly after 12 p.m., Royce identified Murphy by looking at him through the window, and Murphy was arrested after he knocked on the door. When

Murphy was arrested, he had the agreed-upon price of $200 in his right front coin pocket and the telephone number on his cellular telephone was consistent with Royce's telephone number.

On November 18, 2004, an information was filed in Douglas County District Court charging Murphy with conspiracy to commit first degree sexual assault on a child. The information alleged that on or about October 12, Murphy

> with intent to promote or facilitate the commission of a felony to wit: first degree sexual assault on a child, did then and there agree with another, that they would engage in or solicit the conduct, cause or solicit the result specified by the definition of the overt act in pursuance of the conspiracy to wit: agreed and planned to have sex with a twelve year old female for $200, and met at the predetermined location, [in Douglas County, Nebraska.]

In April and May 2005, Murphy filed several motions in limine generally asserting that the testimony of Royce and three other witnesses, D.P., C.H., and A.V., was inadmissible because the witnesses were jailhouse informers within the meaning of Neb. Rev. Stat. § 29-1929 (Cum. Supp. 2004) and the State had not complied with certain provisions of that statute. Murphy alleged that D.P., C.H., and A.V. were criminal suspects, as each had admitted under oath to having engaged in a sexual act with Murphy for money in violation of Neb. Rev. Stat. § 28-801 (Reissue 1995). Further, Murphy contended that Royce was an accused defendant because she was arrested for soliciting prostitution and massage without a license and she was a criminal suspect in the criminal conspiracy case. The district court denied the motions in limine because the witnesses were not " 'in custody' " as required by the statute.

Trial was held on May 25 through 27, 2005. At trial, evidence was adduced that set forth the facts as set forth above. Rieck also testified that Murphy's date of birth was November 1, 1966.

Royce testified that she met Murphy in the summer of 2004 through a friend, D.P. Between the first meeting and October 2004, Royce and Murphy met approximately 15 times to have sex for which Royce received money. Throughout that time period, Royce conversed with Murphy on the telephone about 25 times. Royce stated that during most of these telephone

conversations, Murphy said that he was looking for a younger girl, which Royce interpreted to mean his wanting to have sex with such a girl. Royce told Murphy she could find a 13-year-old. Murphy asked Royce four times how old the girl was and when Royce could find her. These conversations took place prior to Royce's arrest on October 7. Royce also testified that Murphy came to her house on October 12 to have sex with an 11-year-old. At trial, Murphy acknowledged that the $200 in his pocket was the agreed-upon price to have sex with someone that Royce told him was 11.

D.P., born January 25, 1987, was interviewed on December 30, 2004, at the Douglas County Youth Center. D.P. testified she met Murphy in July 2004. D.P. met Murphy approximately five times from July to September 2004 to introduce him to girls for which Murphy paid D.P. At one point, Murphy asked D.P. if she could find him a girl as young as 11 or 12.

C.H., born on September 7, 1987, was interviewed by police in January 2005 while she was in the Geneva Youth Development Center. She testified that she met Murphy through D.P. at the end of September or the beginning of October 2004, and before the current charges were public. When C.H. met Murphy, she told him that she was 11 years old. Murphy, while masturbating, told C.H. he liked 11-year-olds because they were "fresh" and "clean." Murphy paid C.H. $200 for this encounter.

A.V., born May 24, 1988, was first interviewed by police in January 2005. In June 2004, A.V. met Murphy through D.P. D.P. arranged for A.V. to meet Murphy at a house to have sex for money. A.V. told Murphy she was in seventh grade and that she was 12 years old. A.V. and Murphy had sex for which A.V. received money. At the time of the encounter, A.V. was actually 16 years old.

Following trial, the State moved to amend the information by interlineation to reflect the testimony as provided throughout the trial. The information, as amended, alleged that on or about October 12, 2004, Murphy

> with intent to promote or facilitate the commission of a felony to wit: first degree sexual assault on a child, did then and there agree with another, that they would engage in or solicit the conduct, cause or solicit the result specified by

the definition of the overt act in pursuance of the conspiracy to wit: agreed and planned to have sex with a female child under the age of sixteen for $200, and met at the predetermined location, [in Douglas County, Nebraska.]

On May 27, 2005, the district court stated, "It is the opinion of this Court that [Murphy] has not shown that the government induced him to commit the offense. . . . While I do not find any evidence of inducement, even if there was, there was substantial evidence [Murphy] was predisposed to commit this offense." The court found Murphy guilty of the charge of criminal conspiracy to commit first degree sexual assault on a child. On July 12, Murphy was sentenced to 8 to 10 years' imprisonment. Murphy has timely appealed to this court.

## ASSIGNMENTS OF ERROR

On appeal, Murphy contends that the district court erred in failing to find that the State failed to prove beyond a reasonable doubt that he had not been entrapped; that the court erred in overruling his motions in limine and allowing witnesses D.P., C.H., and A.V. to testify based upon the court's ruling that they were not "in custody" pursuant to Neb. Rev. Stat. § 29-1928 (Cum. Supp. 2004); and that the sentence imposed was excessive.

## STANDARD OF REVIEW

In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. McPherson*, 266 Neb. 715, 668 N.W.2d 488 (2003); *State v. Shipps*, 265 Neb. 342, 656 N.W.2d 622 (2003). When reviewing a criminal conviction for sufficiency of the evidence to sustain a conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. McPherson, supra*; *State v. Jackson*, 264 Neb. 420, 648 N.W.2d 282 (2002).

## ANALYSIS

*Entrapment.*

Murphy contends that the district court erred in failing to find that that State failed to prove beyond a reasonable doubt that he had not been entrapped.

Facts constituting entrapment are ordinarily to be determined by the jury or trier of fact in each individual case, and its findings will be disturbed on appeal only when the preponderance of the evidence against such findings is great and they clearly appear to be wrong, or when the findings are clearly contrary to law. *State v. Heitman*, 262 Neb. 185, 629 N.W.2d 542 (2001).

Under Nebraska law, entrapment is the governmental inducement of one to commit a crime not contemplated by the individual, in order to prosecute that individual for the commission of the criminal offense. *State v. Graham*, 259 Neb. 966, 614 N.W.2d 266 (2000); *State v. Stahl*, 240 Neb. 501, 482 N.W.2d 829 (1992). Nebraska has adopted the "origin of intent" test to determine whether a defendant was entrapped. Under this test, the defendant was entrapped if (1) the government induced the defendant to commit the offense charged and (2) the defendant's predisposition to commit the criminal act was such that the defendant was not otherwise ready and willing to commit the offense on any propitious opportunity. *State v. Graham, supra*; *State v. Stahl, supra.*

Because entrapment is in the nature of an affirmative defense, the burden of going forward with evidence of the element of governmental inducement is on the defendant. *State v. Graham, supra*; *State v. Stahl, supra.* In assessing whether the defendant has satisfied his or her burden of going forward with evidence of governmental inducement, the initial duty of the court is to determine whether there is sufficient evidence that the government has induced the defendant to commit a crime. *State v. Graham, supra*; *State v. Swenson*, 217 Neb. 820, 352 N.W.2d 149 (1984). This determination is made as a matter of law, and the defendant's evidence of inducement must be more than a scintilla. *Id.* To be more than a scintilla, evidence cannot be vague, conjectural, or the mere suspicion about the existence of a fact, but must be real and of such quality as to induce conviction. *Id.*

The evidence in the instant case established that Royce of-fered Murphy what he had previously requested, i.e., that she find him an 11-year-old girl with whom he could have sex. During a recorded telephone conversation, Murphy asked, "How old?" to which Royce responded, "11," and Murphy replied, "Perfect." Murphy agreed to a price of $200 for the underage girl and stated that he did not want to use a condom. The encounter was to occur at Royce's residence during Murphy's lunch hour. Murphy called back to confirm that the meeting was going to take place over his lunch hour and then called back a second time and asked if the $200 included oral sex and asked if "it was a setup." Murphy arrived at Royce's residence shortly after noon. When Murphy was arrested, he had the agreed-upon price of $200 in his right front coin pocket and the telephone number on his cellular telephone was consistent with Royce's telephone number.

Quite simply, Murphy was merely given the opportunity to commit the charged offense and Murphy jumped at the opportunity. If there had been an underage girl at Royce's residence on October 12, 2004, there is no question that Murphy intended to have sexual relations with the girl for the price of $200. The State did not induce Murphy to commit the offense of conspiracy to commit first degree sexual assault on a child.

 Furthermore, even if the State did induce Murphy to commit the offense, the State proved beyond a reasonable doubt that Murphy was predisposed to engage in sexual relations with a minor child.

> Where the State has induced an individual to break the law, it must prove beyond a reasonable doubt that the de-fendant was disposed to commit the criminal act prior to first being approached by government agents. . . . Predisposition to commit the criminal act must be independent and not be the product of the attention of the government directed at the defendant. . . . [T]his is not to say that statements made after the government's inducement can never be evidence of predisposition. If, after the government begins inducing a defendant, he or she makes it clear that he or she would have committed the offense even without the inducement, that would be evidence of predisposition. . . .

However, only those statements that indicate a state of mind untainted by the inducement are relevant to show predisposition. . . . Predisposition may be shown by circumstantial evidence.

(Citations omitted.) *State v. Canaday*, 263 Neb. 566, 585-86, 641 N.W.2d 13, 28 (2002).

The testimony of D.P., C.H., and A.V. is direct evidence of Murphy's prior desire to meet underage girls for the purpose of engaging in sexual intercourse. Between July and September 2004, D.P. testified, Murphy asked her if she could find him a girl as young as 11 or 12. C.H. testified that at the end of September or the beginning of October 2004, and before the current charges became public, D.P. introduced her to Murphy for the purpose of C.H.'s having sex with Murphy for $200. At the time, C.H. was 17 years old but was instructed to tell Murphy that she was 11 years old. Murphy, while masturbating, told C.H. he liked 11-year-olds because they were "fresh" and "clean." A.V. testified that in June 2004, D.P. arranged for 16-year-old A.V. to meet Murphy at a house to have sex for money. A.V. told Murphy that she was 12 years old and was in seventh grade. A.V. and Murphy had sex for which A.V. received money. Each of these events occurred prior to Royce's contact with Murphy. This evidence establishes, beyond a reasonable doubt, that Murphy was predisposed to commit the criminal act prior to first being approached by government agents.

In sum, the State did not induce Murphy to commit the charged offense. Furthermore, the evidence established, beyond a reasonable doubt, that Murphy was predisposed to commit the criminal act prior to first being approached by government agents. Consequently, Murphy's claim of entrapment is without merit.

*Motion in Limine.*

Next, Murphy contends that the district court erred in overruling his motions in limine and allowing "jailhouse informers" D.P., C.H., and A.V. to testify based upon the court's ruling that they were "not 'in custody.'" Murphy contends that the court erred in its analysis of the jailhouse informer statutes by concluding that a jailhouse informer "must be 'in custody.'"

Section 29-1928 provides:

The Legislature finds and declares that the interests of justice may be thwarted by unreliable testimony at trial. There is a compelling state interest in providing safeguards against the admission of testimony the reliability of which may be or has been compromised through improper inducements.

The Legislature further finds and declares that the testimony of a jailhouse informer is sometimes unreliable. A jailhouse informer, due to the receipt or promise of a benefit, is presumed to provide testimony that may be unreliable.

For purposes of sections 29-1928 and 29-1929, a jailhouse informer is a person in custody as: An accused defendant, a convicted defendant awaiting sentencing, a convicted defendant serving a sentence, or a criminal suspect.

Section 29-1929 provides:

Before the testimony of a jailhouse informer is admissible in court, the following requirements must be met:

At least ten days before trial, the state shall disclose to the person against whom the jailhouse informer will testify, or to such person's counsel:

(1) The known criminal history of the jailhouse informer;

(2) Any deal, promise, inducement, or benefit that the state or any person acting on behalf of the state has made or may make in the future to the jailhouse informer;

(3) The specific statements allegedly made by the person against whom the jailhouse informer will testify and the time, place, and manner of disclosure;

(4) All cases known to the state in which the jailhouse informer testified or offered statements against a person but was not called as a witness, whether or not the statements were admitted as evidence in the case, and whether the jailhouse informer received any deal, promise, inducement, or benefit in exchange for or subsequent to such testimony or statement; and

(5) Whether at any time the jailhouse informer recanted testimony or statements and, if so, a transcript or copy of such recantation.

The briefs cite us to no cases interpreting or applying §§ 29-1928 and 29-1929, and our independent research has uncovered none. Thus, the instant case presents an issue of first impression regarding the meaning of the language contained in § 29-1928 defining a "jailhouse informer" as "a person in custody as: An accused defendant, a convicted defendant awaiting sentencing, a convicted defendant serving a sentence, or a criminal suspect."

██ Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the court below. *State v. Griffin*, 270 Neb. 578, 705 N.W.2d 51 (2005); *State v. Jonusas*, 269 Neb. 644, 694 N.W.2d 651 (2005); *State v. Pathod*, 269 Neb. 155, 690 N.W.2d 784 (2005).

██ In construing a statute, a court must look to the statute's purpose and give to the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it. *State v. Gales*, 269 Neb. 443, 694 N.W.2d 124 (2005); *State v. Portsche*, 261 Neb. 160, 622 N.W.2d 582 (2001). In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *In re Interest of J.K.*, 265 Neb. 253, 656 N.W.2d 253 (2003); *In re Interest of Anthony V.*, 12 Neb. App. 567, 680 N.W.2d 221 (2004).

██ If the words of the statute are plain, direct, and unambiguous, an appellate court will not resort to interpretation to ascertain the meaning of those words. *In re Interest of Valentin V.*, 12 Neb. App. 390, 674 N.W.2d 793 (2004). In construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *Heathman v. Kenney*, 263 Neb. 966, 644 N.W.2d 558 (2002); *In re Interest of Valentin V., supra*. When construing a statute, an appellate court must look to the statute's purpose and give to the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it. *Heathman v. Kenney, supra*.

Murphy asks us to determine that a jailhouse informer is either a person "in custody" or " 'an accused defendant, a convicted defendant awaiting sentencing, a convicted defendant serving a sentence, or a criminal suspect.' " Brief for appellant at 27-28. A reading of the plain language of the statute, giving effect to all the language contained therein, makes it clear that this is not what the language of the statute provides. Section 29-1928 defines a "jailhouse informer" as "a person in custody as: An accused defendant, a convicted defendant awaiting sentencing, a convicted defendant serving a sentence, or a criminal suspect." Thus, in order to qualify as a "jailhouse informer," the informer must be "a person in custody." See *id*. Consequently, the district court properly analyzed the statutes in question and properly allowed D.P., C.H., and A.V. to testify in the instant case.

*Excessive Sentence.*

Finally, Murphy contends that the sentence imposed upon him was excessive. Murphy was convicted of conspiracy to commit first degree sexual assault on a child, a Class II felony, punishable by 1 to 50 years' imprisonment. See, Neb. Rev. Stat. § 28-202 (Reissue 1995) (conspiracy statute); Neb. Rev. Stat. § 28-319(1)(c) and (2) (Reissue 1995) (first degree sexual assault); Neb. Rev. Stat. § 28-105 (Cum. Supp. 2004) (felonies; classification of penalties). Murphy was sentenced to 8 to 10 years' imprisonment.

A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. *State v. Aldaco*, 271 Neb. 160, 710 N.W.2d 101 (2006); *State v. Losinger*, 268 Neb. 660, 686 N.W.2d 582 (2004). An abuse of discretion occurs when a sentencing court's reasons or rulings are clearly untenable and unfairly deprive the litigant of a substantial right and a just result. *State v. Aldaco, supra; State v. Losinger, supra*. In considering a sentence to be imposed, the sentencing court is not limited in its discretion to any mathematically applied set of factors. *State v. Aldaco, supra; State v. Losinger, supra*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *State v. Aldaco, supra; State v. Losinger, supra*.

█ Factors a judge should consider in imposing a sentence include the defendant's age, mentality, education, experience, and social and cultural background, as well as his or her past criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime. *State v. Aldaco, supra*; *State v. Losinger, supra*.

█ A sentencing court has broad discretion as to the source and type of evidence and information which may be used in determining the kind and extent of the punishment to be imposed, and evidence may be presented as to any matter that the court deems relevant to the sentence. *State v. Griffin*, 270 Neb. 578, 705 N.W.2d 51 (2005); *State v. Bjorklund*, 258 Neb. 432, 604 N.W.2d 169 (2000). A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *State v. Griffin, supra*.

Murphy is a 39-year-old man with a high school education. At the time of trial, he was undergoing a divorce and had three dependent children. Murphy's criminal history includes convictions for failure to obey a traffic signal, driving without proper plates, no valid registration, and no operator's license. He has also been convicted of altering a public record and issuing a bad check. Although Murphy argues that there was no victim in this case, the fact remains that Murphy conspired to have sex with an 11-year-old girl, and, had there been an 11-year-old girl at Murphy's destination that day, she would have been the victim of a sexual assault for the price of $200. The sentence imposed by the court was not an abuse of discretion.

## CONCLUSION

Having considered each of Murphy's assigned errors and finding them to be without merit, we hold that Murphy's conviction and sentence are affirmed.

AFFIRMED.