*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

JOSEPH ROBERT BENSCH,

Defendant-Appellee.

FOR PUBLICATION
April 30, 2019
9:00 a.m.

No. 341585
Lenawee Circuit Court
LC No. 17-005792-AR

Before: TUKEL, P.J., and BECKERING and SHAPIRO, JJ.

SHAPIRO, J.

The prosecution appeals by leave granted[1] the circuit court's ruling that defendant could decline probation and instead be sentenced to incarceration. The prosecution requests that we reject the rule first articulated in *People v Peterson*, 62 Mich App 258, 265; 233 NW2d 250 (1975) that permits criminal defendants to refuse probation. In the absence of a compelling reason to do so, we decline to overrule a longstanding rule of law that has been repeatedly relied on by this Court. Accordingly, we reaffirm *Peterson* and affirm the circuit court.[2]

## I. BACKGROUND

Defendant's criminal convictions arose out of two separate drunk-driving incidents over the course of approximately five months, each of which resulted in its own district court case. In both cases, defendant reached a plea agreement whereby he pleaded guilty to operating while intoxicated, second offense, MCL 257.625(1). Defendant was sentenced for the offenses on the

---

[1] *People v Bensch*, unpublished order of the Court of Appeals, issued May 18, 2018 (Docket No. 341585).

[2] We review de novo questions of law. *People v Steele*, 283 Mich App 472, 482; 769 NW2d 256 (2009).

same day. The sentences imposed run concurrently.[3] In one of the cases, the district court sentenced defendant to one year in the county jail.[4] In the other case, the district court sentenced defendant to two years of probation with numerous conditions. Immediately after the district court ruled, defense counsel objected to the probationary sentence, arguing that "if Mr. Bensch doesn't wan[t] to be on probation . . . I don't think the court can put him there." The district court denied the objection.

Defendant appealed by leave granted to the circuit court, where he argued that he could reject probation in favor of incarceration under *Peterson*, 62 Mich App at 265. Defendant contended that the district court erred by forcing him to accept a probationary sentence in the second case, thereby disregarding *Peterson*, which was controlling under the doctrine of stare decisis. The prosecutor, on the other hand, acknowledged that *Peterson* was binding on lower courts but attempted to factually distinguish it. The prosecutor also offered several policy arguments for why defendants should not be permitted to reject probation. After considering the issue, the circuit court held that the district court had erred by barring defendant from "waiv[ing] his privileges to probation[.]" Thus, the circuit court reversed and remanded for resentencing.

## II. DISCUSSION

If a court determines that a convicted defendant "is not likely again to engage in an offensive or criminal course of conduct and that the public good does not require that the defendant suffer the penalty imposed by law, the court may place the defendant on probation under the charge and supervision of a probation officer."[5] MCL 771.1(1). The Legislature has long described a trial court's decision to grant probation as "a matter of grace." See *People v Sattler*, 20 Mich App 665, 669; 174 NW2d 605 (1969).

In *Peterson*, the defendant challenged the probation condition requiring her to submit to warrantless searches, i.e., searches that but for her probationary status would have been unconstitutional. *Peterson*, 62 Mich App at 265. This Court acknowledged that the defendant chose to accept the terms of probation: "Probation is a matter of grace and rejectable, we think, at the option of the probationer." *Id*. The Court nevertheless struck down the condition, determining that despite the ability to reject probation "the waiver of protection against unreasonable searches and seizures is so repugnant to the whole spirit of the Bill of Rights as to make it alien to the essence of our form of government." *Id*. at 266. The Court concluded that a "blanket search and seizure" provision amounts to a bill of attainder for the period of probation. *Id*. at 265.

---

[3] In Michigan, "concurrent sentencing is the norm. A consecutive sentence may be imposed only if specifically authorized by statute." *People v Brown*, 220 Mich App 680, 682; 560 NW2d 80 (1996) (citation omitted).

[4] Defendant was to be released, after serving six months, into a six-month inpatient treatment program.

[5] That statutory section was identical in all relevant respects at the time *Peterson* was decided. MCL 771.1, as amended by 1961 PA 185.

Judge DANHOF dissented from this holding. His opinion, which was later adopted by this Court, argued that by accepting a sentence of probation carrying such a condition, the defendant voluntarily waived her Fourth Amendment rights. *Id*. at 270-272. In defining this approach, Judge DANHOF agreed with the majority that "probation is 'rejectable'; that is, optional and essentially voluntary." *Id*. at 271. He explained, "A probationer or parolee has given his consent in return for more lenient treatment." *Id*. Thus, while the *Peterson* majority and dissent disagreed on whether a defendant could waive the constitutional right to be free from unreasonable searches, they agreed that a defendant could decline probation.

If *Peterson* was the end of the story, we might be willing to address the question as essentially a matter of first impression.[6] However, the rule that defendants can reject probation has been accepted and relied on in subsequent cases in which a defendant agreed to probation but objected to a particular condition.[7]

Not long after *Peterson*, the issue of warrantless probation searches arose again in *People v Richards*, 76 Mich App 695, 699; 256 NW2d 793 (1977). Adopting Judge DANHOF'S analysis, we found that there was no "constitutional barrier" to a warrantless-search condition of probation because the defendant had waived objection to this condition by accepting probation. Similarly, in *People v Hellenthal*, 186 Mich App 484, 486; 465 NW2d 329 (1990),[8] we rejected a Fourth Amendment challenge to a warrantless-search probation condition:

> [A] waiver of one's constitutional protections against unreasonable searches and seizures may properly be made a condition of a probation order where the waiver is reasonably tailored to a defendant's rehabilitation. As Judge Danhof recognized in his dissent in *Peterson*, "[a] probationer or parolee has given his consent in return for more lenient treatment." [Citations omitted.]

---

[6] We note that we are not bound by any rules of law announced in *Peterson* because that case was decided before November 1, 1990. See MCR 7.215(J)(1). However, while we are not "strictly required to follow uncontradicted opinions from this Court decided prior to November 1, 1990," those opinions are nonetheless "considered to be precedent and entitled to significantly greater deference than are unpublished cases." *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018) (emphasis removed). Further, "[a] published opinion of the Court of Appeals has precedential effect under the rule of stare decisis." MCR 7.215(C)(2).

[7] The dissent argues that a defendant should not be permitted to decline probation, a rule it unilaterally characterizes as "the probation veto doctrine." While a memorable turn of a phrase, this characterization is incomplete as it suggests that a defendant's "veto" of probation leaves him or her unpunished. To the contrary, the very rare defendant who elects not to accept probation will be incarcerated. Similarly, we reject as hyperbole the prosecution's claim that the *Peterson* rule allows defendants to "dictate the terms of his punishment." The rule does not allow a defendant to refuse a sentence of incarceration and select probation or to choose his or her minimum and maximum terms.

[8] *Hellenthal* is not binding on us because it was decided in August 1990. MCR 7.215(J)(1).

-3-

In other words, we again reasoned that the warrantless-search condition of probation was constitutional because the defendant—by accepting probation—agreed to waive the constitutional right to be free from unreasonable search and seizures.[9] Waiver is an *intentional* relinquishment of a known right. *People v Kammeraad*, 307 Mich App 98, 117; 858 NW2d 490 (2014). Thus, the underlying premise to *Hellenthal* is that a defendant consents to probation and can choose to reject it.

We again employed this analysis in *People v Oswald*, 208 Mich App 444, 446; 528 NW2d 782 (1995), in which the defendant argued that a fine imposed by the trial court as a condition of probation was unauthorized. We held that the fine was authorized, but we also reasoned that

> had defendant found the term of probation to be overly onerous, he could have declined the grant of probation, notified the court that he would not abide by the terms of probation, and submitted himself for sentencing directly under the retail fraud statute, with its limitation on the amount of fine that may be imposed. [*Id*.]

Unpublished decisions from this Court have also relied on the fact that a defendant agrees to probation in resolving challenges to orders of probation.[10] These decisions are not binding precedent, MCR 7.215(C)(1), but it is clear that the rule that a defendant can elect to reject probation has been used by this Court (and others[11]) to dispose of arguments made by defendants challenging the terms of their probation. Under these circumstances, we decline to simply abandon that rule without a compelling reason to do so.[12]

"[U]nder the doctrine of stare decisis, principles of law deliberately examined and decided by a court of competent jurisdiction should not be lightly departed." *City of Coldwater v Consumers Energy Company*, 500 Mich 158, 161; 895 NW2d 154 (2017) (quotation marks and

---

[9] We note that the United States Supreme Court has since declined to rule on whether a probationer's consent to warrantless searches is dispositive of Fourth Amendment issues. *United States v Knights*, 534 US 112, 118; 122 S Ct 587; 151 L Ed2d 497 (2001).

[10] *People v Loughner*, unpublished per curiam opinion of the Court of Appeals, issued May 20, 1997 (Docket No. 190286); *People v Jan*, unpublished per curiam opinion of the Court of Appeals, issued January 13, 1998 (Docket No. 196492).

[11] See *Brennan v Dawson*, opinion of the United States District Court for the Eastern District of Michigan, issued September 7, 2017 (Case Nos. 16-10119).

[12] The dissent notes the published decisions relying on *Peterson* but dismisses them because they "contain no discussion of the source of the doctrine" other than two cases that relied on Judge DANHOF'S partial dissent, which, according to the dissent, was "deficient." Setting aside the strength of *Peterson's* legal analysis, the dissent ignores that this Court has relied on the case to resolve challenges to conditions of probation by reasoning that the defendant *chose* probation and therefore cannot complain of its conditions. Notably, the dissent fails to address the viability of these decisions if we eliminate the rationale on which they rest. Further, we cannot simply reject the *Peterson* rationale when a defendant relies on it and accept it when the prosecution relies on it.

citation omitted). "The application of stare decisis is generally the preferred course, because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *People v Tanner*, 496 Mich 199, 250; 853 NW2d 653 (2014) (quotation marks and citation omitted). Factors to consider in determining whether to overrule a decision include "whether the decision at issue defies 'practical workability,' whether reliance interests would work an undue hardship, and whether changes in the law or facts no longer justify the questioned decision." *Id.* at 250-251 (quotation marks and citation omitted).

The prosecution does not identify any difficulties that have occurred as a result of defendants being able to refuse probation. Indeed, as a practical matter, we think it is safe to say that the overwhelming majority of criminal defendants gladly welcome probation over incarceration and that the issue rarely arises. Further, it is questionable whether a trial court can find that a defendant who does not want to participate in probation "is not likely again to engage in an offensive or criminal course of conduct and that the public good does not require that the defendant suffer the penalty imposed by law . . . ." MCL 771.1(1). Nevertheless, the prosecution argues that *Peterson* "is no longer good law" because the three possible rationales for that decision have been repudiated. We disagree.

The prosecution first argues that the "probation-as-contract theory," in which the court and the probationer are thought to have arrived at an arms-length bargain, has been rejected. Yet *Peterson* does not describe probation in contractual terms, and therefore this purported development in the law does not provide a basis to depart from that decision. Second, the prosecution argues that *Peterson* and its progeny rest on an outdated view of probation as being an "act of grace" and that we should reject that view. However, this argument runs afoul of the plain language of MCL 771.4, which provides that "[i]t is the intent of the legislature that the granting of probation is a matter of grace."[13] Third, the prosecution argues that probation is no longer considered a rehabilitative alternative to incarceration and is instead considered solely as a criminal punishment with the corresponding goals of retribution and deterrence. We disagree with this premise, but even accepting it as true, we fail to see how this warrants a change in long-standing law. If a defendant declines probation, the goals of the criminal justice system can still be accomplished through incarceration.

The prosecution also contends that caselaw from other jurisdictions supports overruling *Peterson*. However, our review of that caselaw shows that states take a variety of approaches toward this issue. Some states allow a defendant to refuse probation. See e.g., *People v Olguin*, 45 Cal 4th 375; 198 P3d 1, 4 (2008); *State v Divan*, 724 NW2d 865, 872; 2006 SD 105 (2006); *State v McCready*, 234 Wis 2d 110; 2000 WI App 68; 608 NW2d 762, 764 (2000). Other states do not. See e.g., *State v Pawling*, 9 Neb App 824; 621 NW2d 821, 826 (2000); *State v Walton*, 137 Ohio App 3d 450; 738 NE2d 1258, 1263 (2000); *State v Estep*, 854 SW2d 124, 127 (Tenn

---

[13] The prosecution also argues that the U.S. Supreme Court rejected the notion that probation is an act of grace in *Gagnon v Scarpelli*, 411 US 778; 93 S Ct 1756; 36 LEd2d 656 (1973). We disagree. *Gagnon* did not reject the view that probation is a matter of grace, only the argument that because probation is an act of grace, the defendant is not entitled to any due process when the prosecution seeks probation revocation. *Id.* at 782 n 4.

Crim App, 1992). At least one jurisdiction expressly provides by statute that "[a] person may not be put on probation without his consent," DC Code 16-710(a), while other jurisdictions have statutes that expressly provide that a defendant does not have the right to reject probation. Ala Code § 15-22-50; Or Rev Stat 137.010(5). Given that overview, we do not agree with the prosecution that *Peterson* has become an outdated nullity. To the contrary, numerous states agree that defendants should have the choice to participate in probation. For those reasons, we are not compelled to overrule *Peterson* based on out-of-state authority.

MCL 771.1, the statute allowing a trial court to impose probation, has remained essentially the same since *Peterson* was decided. However, the prosecution contends that there are two probation programs in the Code of Criminal Procedure (the Code), MCL 760.1 *et seq*., that explicitly require a defendant's permission. From this the prosecution argues that when the Legislature wants to allow a defendant to refuse a sanction, it knows how to explicitly do so.

The first probation program that the prosecution relies on took effect in 2013 as the "probation swift and sure sanctions act," Chapter XIA of the Code. 2012 PA 616. In 2017, the Legislature amended that chapter to include a subparagraph, which, according to the prosecution, provides that a defendant may decline to participate in this program. See MCL 771A.4(4)(a), added by 2017 PA 17. The prosecution is mistaken. The statute contains no specific provision that allows a defendant to decline the program. Rather, MCL 771A.4(4)(a) merely provides that if the jurisdiction in which the defendant has been convicted does not have a swift and sure probation program, and the court wishes to place the defendant in such a program operating in a different county, then the defendant must agree to the change of jurisdiction to another county.

The other probation program to which the prosecution refers us to is the special alternative incarceration program, MCL 771.3b, which was added to the probation chapter (Chapter XI) of the Code in 1988. 1988 PA 286. Relevant to this appeal, that statutory section provides that "[a] person shall not be placed in a program of special alternative incarceration unless the person consents to the placement." MCL 771.3b(6). This provision is also inapposite. Special alternative incarceration can only be imposed as a *condition* of probation and the statute permits a defendant to object to that condition even if he otherwise "accepts" probation. See MCL 771.3b(1) (a special alternative incarceration program may be imposed "[i]n addition to any other terms or conditions of probation provided for under this chapter . . . ."). We do not see a conflict between the general rule that probation may be declined and a rule that even when a defendant "accepts" probation, he may still be granted a right by statute to decline a specific provision of that probation.

In sum, we conclude that the arguments made by the prosecution are not compelling reasons to depart from the long-standing interpretation of MCL 771.1 announced in *Peterson*. We therefore reaffirm the rule that a defendant may decline a sentence of probation and instead seek a sentence of incarceration.

Affirmed and remanded to the trial court for resentencing consistent with this opinion. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Jane M. Beckering